## CLARK *vs.* GIFFORD.

Where a deed of real estate was executed by one party, and a note signed by the other for the payment of a sum of money, the deed being the consideration of the note, and both papers were *deposited* with a third person, with directions to keep them until both parties should agree to have them exchanged ; *it was held*, that such transaction did not constitute an *absolute delivery* of the deed, so as to enable the grantor to maintain a suit upon the note.

It is not necessary that the term *escrow* should be used when an instrument is delivered to a third person to prevent its taking immediate effect; that term evinces more clearly and distinctly than any other the actual intention of the parties ; but where such intention is indicated in any other manner, effect will be given to it, unless the technical or legal phraseology employed by the parties renders it impracticable.

What the nature of the delivery was, whether absolute or conditional, and what were the actual intentions of the parties, are questions of fact to be settled by a jury, where the evidence leaves any doubt upon the subject.

Although adjudged cases seem to consider a *declaration* by the grantor, when he executes the instrument or delivers it to a third person, *that he delivers it as his deed*, as strongly indicating an intention that it shall take immediate effect, such a declaration is nevertheless but matter of evidence to be weighed in connection with the other circumstances of the case, to determine the real character of the transaction.

THIS was an action of *assumpsit*, tried at the Washington circuit in November, 1830, before the Hon. ESEK COWEN, one of the circuit judges.

The action was founded on a note in writing, dated 27th October, 1821, by which the defendant promised to pay the plaintiff $200—one half of the sum in two years and the residue in three years from date, the payment to be made in *sawing*. The signature of the defendant was proved, also that a *demand of payment in sawing* was made in December, 1829. The plaintiff rested. The defendant moved for a nonsuit, insisting that to entitle the plaintiff to recover, it was incumbent on him to shew that *he had timber* to be sawed. The judge refused the nonsuit. The defendant then proved that, at the time when the note was signed, a deed of a moiety of a saw-mill, of which mill the parties were at the time joint owners, was executed by the plaintiff to the defendant and acknowledged before a commissioner ; that the deed was the

*consideration* upon which the note was given, and the deed and note were, on the day of their date, *deposited* by the parties with the commissioner, (Dr. John Scott,) with directions to keep them until both of the parties should agree to have them exchanged. The papers remained with Dr. Scott in that situation upwards of eight years. In the first week of December, 1829, the *defendant* told Scott that he and the plaintiff had agreed to have the papers destroyed. On the next day, the *plaintiff* called on Scott and told him that he and the defendant had agreed to have the note destroyed ; that each was to have his own paper—he his deed and the defendant his note ; whereupon Scott delivered the deed to the plaintiff, who proposed to Scott to let him have the note also, saying that he would see the defendant in a few days and would deliver it to him. Scott at first hesitated, but placing confidence in the defendant's honor, gave him the note. The plaintiff then called a witness, who testified that in December, 1829, he entered into an arrangement with the plaintiff for the purchase of his moiety of the mill, and proceeded to repair the mill ; that the defendant would not permit him to repair it, saying that the title and possession were in him by virtue of a deed in Dr. Scott's hands, and that he would not consent to the witness' proceeding with the repairs until the papers in Scott's hands were delivered up ; adding, however, that he had no objections to the witness having the mill, if the plaintiff would come and settle with him. The parties subsequently had an interview, in which the plaintiff offered the deed to the defendant, who refused to receive it. The judge ruled that the defendant's claim of title under the deed did not vary the legal effect of the original transaction, which left the title in the plaintiff until a delivery of the deed ; no such delivery had taken place ; the plaintiff had obtained the deed and note fraudulently, and must be nonsuited. A nonsuit was accordingly entered, which was now moved to be set aside.

*D. Russell*, for the plaintiff. The deed in this case, when put into the hands of the third person, was not deposited as an *escrow*, to be subsequently delivered ; it was delivered to take effect upon a future event, viz. the agreement of the par-

ties that each was to have the benefits secured by the instruments mutually executed, and so are the adjudged cases, 2 *Mass. R.* 451 ; 9 *id.* 307 ; 12 *Com. L. R.* 351 ; 6 *Wendell*, 666. That agreement did take place ; for although at one time the parties agreed that the instruments should be destroyed, and the plaintiff in pursuance of such agreement took up his deed, the defendant would not abide by the agreement, but insisted upon having the title to the property, and interfered with the plaintiff's right to control it. The plaintiff then brought his suit on the note, and by so doing, the rights of the parties became fixed—the mill belonged to the defendant and the note to the plaintiff. What other course was left for the plaintiff ? After the assertion of title by the defendant, he was discharged from his obligation to deliver him the note.

*S. Stevens*, for the defendant, insisted upon the objection taken at the trial, that the plaintiff had not shewn enough to entitle himself to a recovery, allowing that he had a remedy on the note ; but he contended that he had no such remedy, that the note never had a legal existence, and that it was delivered as an *escrow*, and remained such until the plaintiff fraudulently obtained possession of it. He insisted further, that the claim of title interposed by the defendant, testified to by the witness for the plaintiff, did not change the character of the original transaction, and render the delivery of the note absolute. Besides, what was said by the defendant was said under the impression that the papers still remained in the hands of the depositary, and instead of evincing an intention to vary the agreement made to destroy the papers, shewed an entire willingness that such agreement should be carried into effect.

*By the Court*, SUTHERLAND, J. The plaintiff was properly nonsuited. The note or instrument on which this action was brought, and the deed which was the consideration upon which it was given, were never absolutely delivered. The testimony of Dr. Scott is clear and explicit upon this subject. There was nothing like an absolute delivery of the deed, ei-

ther technically or according to the intention of the parties. The term *delivery* does not appear to have been used in the course of the transaction ; the papers were *deposited* with the witness, to be delivered when the parties should subsequently direct. The law upon this subject is well stated by Ch. J. Parsons, in *Wheelwright* v. *Wheelwright*, 2 *Mass. R.* 452. He says, " If a grantor deliver any writing *as his deed* to a third person, to be delivered over by him to the grantee on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the grantee. But if the grantor make a writing and seal it, and deliver it to a third person as his writing or escrow, to be delivered by him to the grantee upon some future event, as his, the grantor's, deed, it is not the grantor's deed until the second delivery. It is not necessary that the term *escrow* should be used when an instrument is delivered to a third person, in order to prevent its taking immediate effect. That term would perhaps evince more clearly and distinctly than any other the actual intention of the parties. But where such intention is indicated in any other manner, effect is to be given to it, unless the technical or legal phraseology employed by the parties renders it impracticable. What the nature of the delivery was, whether absolute or conditional, and what were the actual intentions of the parties, are always questions of fact to be settled by the jury, where the evidence leaves any doubt upon the subject. *Vide Hatch* v. *Hatch*, 9 *Mass. R.* 310. The cases seem to consider a declaration by the grantor, when he executes the instrument or delivers it to a third person, *that he delivers it as his deed*, as stongly indicating an intention that it shall take immediate effect. Such a declaration, however, is, I apprehend, but matter of evidence to be weighed in connection with the other circumstances in the case, in order to determine the real character of the transaction. *Doe, ex dem. Garnor*, v. *Knight*, 12 *Com. L. R.* 351. 5 *Barn. & Cres.* 671. *Jackson* v. *Rowland*, 6 *Wendell*, 666. 6 *Mod.* 217. 3 *Coke*, 35, *b.* 36, *a. Shep. Touch.* 57, 9. 4 *Cruise*, 34, 5.

In this case, the parties not only never intended that the instrument should take immediate effect, but the plaintiff ob-

tained possession of the note on which this suit is brought, with the declared intention and purpose of delivering it to the defendant to be destroyed. To permit him to enforce it under such circumstances, would be giving effect to a gross fraud.

New trial denied.