[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 552 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 553 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 554 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 555 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 556 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 557 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 558 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 559 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 560 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 561 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 562 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 563 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 564 
I have, in my examination of these cases, endeavored to consolidate the facts together, with my views of them, into a single cause, instead of examining each by itself. There are some slight differences in the facts of the cases, but not sufficient to affect in any degree the merits.
Section 15 of the general banking law, passed in 1838, authorizes any number of persons to associate to establish offices of discount, deposit and circulation, upon the terms and conditions, and subject to the liabilities prescribed in said act; but the actual capital of such association must not be less than $100,000.
Section 16, requires the associates, under their hands and seals, to make a certificate which shall specify: 1st, the *Page 565 
name of the association; 2d, the place where the operations of discount and deposit are to be carried on; 3d, the amount of capital stock of the association, and the number of shares in which it shall be divided; 4th, the names and places of residence of the shareholders, and the number of shares held by each of them, respectively; 5th, the period when such association shall commence and terminate; which certificate shall be proved or acknowledged and recorded in the office of the clerk of the county where any office of such association shall be established, and a copy thereof filed in the office of the secretary of state. Until the certificate required by the § 16, is made, there is no legal institution existing, and those who did not unite in the certificate of the 22d of September, are not members of the association. But it is unnecessary to discuss this branch of the case, as our opinion and decision in these cases are placed on other grounds.
There was no absolute delivery of the bonds and mortgages. It was distinctly understood that mortgages on incumbered lands could not be received as payment for the stock. The bonds and mortgages were left with Ruggles, but not to be used unless the incumbrances were removed. (Clark v. Gifford, 10 Wend.,
310; Gilbert v. The North American Fire Insurance Company, 20Wend., 43; Johnson v. Baker, 4 Barn. and Ald., 440.) These cases show, that the mortgages in question were delivered conditionally, and not absolutely.
Besides, those mortgages were never treated as delivered, or as belonging to the bank. They were not received in payment of stock, either absolutely, in full, or in part. The defendants were not treated as stockholders by the bank in any way. The suit to foreclose the mortgages cannot therefore be sustained.
The question then arises on the liability of the defendants to pay for the stock subscribed by them. Are they legally subscribers for stock and liable to pay therefor? They signed *Page 566 
the original articles for the number of shares affixed to their names respectively. The bank, however, was never organized under these articles, but was in reality organized without reference to them. There can be no good reason for holding the defendants, or either of them, upon the articles signed in June. Those articles were never in any manner carried out, but were substantially abandoned. The only plausible ground for charging the defendants, is, upon the certificate of September 22, 1838.
A corporation may maintain an action at law against a subscriber to the stock of the company for his unpaid subscription. (Goshen and Minisink Turnpike Company v.Horton, 9 J.R., 217; The Dutchess Cotton ManufacturingCompany v. Davis, 14 J.R., 238; Spear v. Crawford, 14Wend., 20.) In all those cases there was a promise to pay for the stock. In the present cases there is no such promise. But admit that no express promise is necessary, what is the situation of these parties? The defendants acknowledged themselves to be stockholders when in fact they were not such. They agree to take stock and pay for it, but do they agree to pay for the stock with the absolute certainty that they cannot have it? Do they agree to pay for what they neither have nor can have? They have never been regarded, or treated as the owners of the stock while the bank had the power of allotting stock to them. It has never been either allotted or offered to them.
We think the language of the vice-chanceller, in his opinion in the case against Smith, is very appropriate, viz.: "I believe it will be conceded as sound, both in morality and equity, that the corporation which grew out of their actions should not have the benefit of a subscription unless they performed the condition upon which the subscription was obtained even though those who made the promise were not agents of the corporation," citingEdwards v. Grand Junction Railway Company (7 Simons, 337);Same v. Same (1 Milne Craig, 650). *Page 567 
We are willing to go still further than the vice-chancellor. We believe it sound both in morality and equity that the corporation should not have the benefit of these subscriptions unless they can perform the obligations on their part to allot the stock which was to be the fruit of such subscriptions. This they have not done, nor the power to do.
The language of Mr. Justice MARVIN in delivering the opinion of the supreme court in the same case, is perhaps still more appropriate, viz.: "There must be equity in the plaintiff's case, and after having repudiated for years all the arrangements with the defendants and denied them the rights of stockholders, the associates, by their receiver who represents them, cannot now be permitted to come in and claim the defendants as stockholders, or partners. They are concluded by their acts."
The judgment of the supreme court must therefore be affirmed.
RUGGLES, Ch. J., JOHNSON, MORSE, JEWETT and WILLARD, Js., concurred in the foregoing opinion.
MASON, J., gave no opinion.
GARDINER, J., having been counsel in the court below, did not sit in these cases.
Judgment affirmed.