void, obtained an alternative writ of prohibition, commanding the justice to desist from proceeding with the examination of the relator upon the charge on which he had been arrested. Upon the return to the alternative writ, the application for an absolute writ was denied, and from that order this appeal is taken.

So far as the statute in question authorized the seizure and sale of vessels and property which might be used in interfering with or disturbing oyster beds, it has been declared unconstitutional both by this court and by the court of appeals. Colon v. Lisk, 13 App. Div. 195, 43 N. Y. Supp. 364; Id., 153 N. Y. 188, 47 N. E. 302. The validity of the other provisions of the statute was not determined in that case. But, if it be assumed that the relator is right in his contention that the provision making his trespass a crime is also invalid, we do not see that that justifies or requires the issue of a writ of prohibition. The respondent Wood, as justice of the peace, has jurisdiction to examine the case when any defendant is brought before him on an arrest, charged with crime. If the relator's contention as to the law is correct, we must assume that, upon the examination, the justice will decide the law correctly, and the defendant be discharged. If held for examination, he can still raise the question of the validity of the statute when he is placed on trial, and, without even awaiting that time, he may seek his release on habeas corpus. There is thus ample opportunity to correct and redress any error that the magistrate may commit. The rule is well settled that "the writ of prohibition is an extraordinary remedy, and should be issued only in cases of extreme necessity, and not for grievances which may be redressed by ordinary proceedings at law or in equity, or by appeal; and it is not demandable as matter of right, but of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case." People v. Westbrook, 89 N. Y. 152. "It should not issue where there are other adequate remedies." People v. Supervisors of Ulster Co., 31 How. Prac. 237. Within this rule, the application was properly denied.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

---

(21 App. Div. 247.)

NON-ELECTRIC FIBRE MANUF'G CO. v. PEABODY.

(Supreme Court, Appellate Division, Second Department.    October 26, 1897.)

1. CORPORATIONS—SUBSCRIPTION TO STOCK—VALIDITY.
    Where several persons make a mutual agreement, by which each agrees to subscribe for a specified number of shares in a proposed corporation, which is thereupon organized by them accordingly, this constitutes a valid, binding subscription, which the corporation, upon its incorporation, is entitled to enforce.

2. SAME—POWER OF DIRECTORS.
    If a corporation is not a going concern, and has no creditors, no business, and no contract obligations, it is competent for its directors (being its only stockholders, and the only persons having any interest in its affairs) to make an agreement releasing themselves, as stockholders or subscribers for stock, from liability to the corporation or to each other.

Appeal from special term.

, Action by the Non-Electric Fibre Manufacturing Company against Royal C. Peabody. From a judgment on a verdict directed by the court, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Frank Harvey Field, for appellant.
Charles Coleman Miller, for respondent.

HATCH, J. A recovery has been had in this action, based upon the certificate of incorporation of the plaintiff, in which the defendant appears to have subscribed for ten shares of stock of the plaintiff, of the par value of $100 each share. The averments of the complaint based the liability of the defendant upon a certain mutual agreement executed by the defendant with four other persons, whereby the former agreed to subscribe for ten shares of the capital stock of the plaintiff, then proposed to be organized as a corporation, and his four associates for five shares each. This agreement was followed by the incorporation of the plaintiff, and the parties to the agreement, in the certificate above mentioned, subscribed for the respective shares mentioned therein. The court held that there could be no recovery upon the agreement, but that the liability of the defendant to the company was created by the certificate of incorporation and the subscriptions therein. The plaintiff was thereupon permitted to amend his complaint to correspond with the proof and the view of the court. It is quite probable that no amendment was needed to entitle the plaintiff to recover, as the agreement constituted a valid, binding subscription for the shares of stock therein agreed to be taken, which the plaintiff became entitled to enforce upon its incorporation; and such appears to have been the view of the court on the motion for a new trial. Railroad Co. v. Gifford, 87 N. Y. 294. It does not follow from this, however, that the plaintiff became entitled to recover. It appeared upon the trial that none of the subscriptions were paid in cash at the time of subscription. The shares subscribed for by the associates of the defendant were paid for in services, and the only money that was paid by any one came from the defendant, who paid the expenses of incorporation and for some other matters, amounting in all to the sum of $700. No other money was ever paid in by anybody. No business was done by the company either in the manufacturing of articles proposed to be manufactured by it or in making contracts which its business contemplated. The only thing which the company or its stockholders ever did in the way of conducting its business was the execution of an agreement between the stockholders themselves. This agreement was made between Deering, as party of the first part, and the other stockholders, as parties of the second part. Inter alia, it recited that Deering, by a contract with the company, was entitled to 2,230 shares of the capital stock of the company, and to 90 per cent. of any increase in the capital stock; and it provided that the said Deering should assign certain shares of his stock to the other stockholders,

certain shares to a trustee, to be disposed of for the benefit of the company, and also assign a certain percentage of any increase of stock under the contract to his associate stockholders, and to the trustee, as aforesaid, for the same purposes as above expressed.   It was further agreed that if, within six months after incorporation of the company, enough paid-in subscriptions should not be obtained to create a fund of $15,000, to enable it to carry on business, then the parties of the second part agreed to assign all of their stock in the company to Deering, for a nominal consideration, and he should be released from all liability under the contract.   The $15,000 working capital was never raised, no money was paid in, and, so far as appears, nothing further was done to forward the enterprise contemplated by the incorporation of the company.

Understanding these facts, we are prepared to consider the rulings of the learned trial judge made upon the trial.   The counsel for the defendant called as a witness one of the stockholders, and was engaged in an attempt to show what was done by the company upon failure to fulfill the contract above referred to.   . The court interposed with a statement that plaintiff could not recover upon that paper, and added: "If you can prove now that the company released them from the subscriptions, or if it was paid, you may do so."   The counsel then proceeded to inquire what was done at a specified meeting of the board of directors respecting the subscription of the stockholders.   This was objected to, on the ground that the minutes would show, and the court replied:   "Yes; put the minutes in."   Inquiry was then made respecting the minutes, and the question was asked, referring to the stockholders aside from Deering:   "Q. And were these four persons released,—did he state?"   This was objected to, and the objection was sustained.   The first president of the company, Mr. Lyon, was then called, and interrogated respecting what transpired at the meeting above referred to, and questions were asked him concerning the cancellation of the contract, and the release of the defendant therefrom, and from his subscription to the capital stock of the company.   These questions were objected to, upon the ground that it was immaterial and irrelevant.   The objections were sustained, and the defendant excepted.   At the conclusion of a series of questions as above outlined, the court remarked:   "The only way to prove that is by what took place there, and, if it was a meeting of the directors, put the minutes in."   Thereupon the counsel asked the question:   "Q. Please look at page 9 of the minutes of this company, dated July 27, 1894, and read from it what purports to be a record of that meeting, and state whether anything else was done there other than what is there recorded."   The court:   "I may as well rule now that these directors could not release themselves from obligations to the company by their own vote.   That covers all under that head."   To this ruling there was an exception taken.   Other questions were asked as to what occurred at the meeting, and the witness answered:   "A good deal occurred without its being a resolution."   Thereupon this question was asked:   "Q. Was anything done between these directors at that meeting with regard to their rights and interest under the agreement of December 9, 1893?"   (Excluded.   Exception.)   The court:   "If any resolution was passed,

prove it." This ended the attempt to prove a defense, and the court directed a verdict.

The case as presented by the record showed that, while a corporation was formed, yet at no time were more than five persons interested in it, all of whom were stockholders. There were no creditors, and could be none, unless Deering had obtained some rights. As to him, he was one of the directors, and is now its president. It is evident that for some reason the venture, resulting in the incorporation of the plaintiff, had failed. It had no money, no creditors, and did no business. It was therefore entirely competent for those interested to wind up its affairs, and make any agreement among themselves which released each from any obligation to the others or to the company. Webster v. Turner, 12 Hun, 264. If, upon the failure to raise a working capital for the company, those interested entered into an arrangement by which the defendant became released from further payment of his subscription, it would constitute a perfect answer to a suit to recover the balance; and it would not necessarily be an essential prerequisite that a formal resolution should be passed by the board of directors. It was competent for those interested so to agree, and, if a valid agreement be established, a defense would be made out. It is quite true that directors of a going concern, having creditors, contracts, stockholders, and a business, could not, by agreement among themselves, release each other from their obligations to the company, to the prejudice of the company, its stockholders and creditors. But there can be no objection, under the circumstances of this case, for the parties in interest to have made an agreement by which the stockholders were released from liability to the company or to each other. They represented all the interest there was, and were competent to contract. Any valid agreement then made, the court would enforce. The defendant became therefore entitled to show, if he could, that an arrangement was made by which he was discharged from liability. The proof rejected was offered for that purpose, was competent, and its rejection was error. It is said that no such defense was pleaded. No such question was raised by any objection, nor was any suggestion of the kind made upon the trial. The ruling of the court excluded the testimony, upon the ground that, if such agreement were established, it would constitute no defense. If a suggestion of this character had been made, the way was open for the defendant to apply to amend his pleading. But such course was futile, under the rule adopted by the court. It is quite clear that, if the court had regarded the agreement as establishing a defense, it would and should have permitted an amendment. It may be that the defendant will require an amended pleading in order to now avail himself of this defense. But, as no such question was raised upon the trial, we think it ought not to be considered here for the first time, under the particular circumstances of this case and the course of the trial.

For error in rejecting the proof offered, the judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.