YONKERS GAZETTE CO. v. TAYLOR.

(Supreme Court. Appellate Division, Second Department. May 24, 1898.)

1. CORPORATIONS—SUBSCRIPTION TO CAPITAL STOCK.

Where parties agree together to form a corporation and become shareholders therein, and such parties intend to become such shareholders, without further act on their part, upon the incorporation of the company, and the agreement remains open and is unrevoked, and the corporation is formed in pursuance of it, and thereafter acts upon it by accepting the same, such

agreement is valid and binding as a subscription to the capital stock of such corporation.

**2. SAME—VALIDITY.**
In order to bind a subscriber in such a case, it is not required that he should sign the certificate of incorporation. Business Corporation Law, § 2, subd. 9.

**3. SAME—PARTIAL PAYMENT.**
Nor is the payment of 10 per cent. when the agreement is made essential to its validity; such payment being required only of those who .subscribe after the corporation is organized. Stock Corporation Law, § 41.

**4. SAME—ORGANIZATION—CHANGE IN NAME.**
Nor does the fact that it proves necessary to organize the corporation under a name different from that proposed in the agreement affect the subscriber's liability, where there is no change in the proposed object, nor in any matter of substance.

Appeal from city court of Yonkers.

Action by the Yonkers Gazette Company against Allen Taylor. From a judgment for plaintiff, defendant appeals.    Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Allen Taylor, for appellant.
John H. Ferguson, for respondent.

HATCH, J.   This action is brought to enforce liability upon a claimed subscription to the capital stock of the plaintiff.   Prior to the formation of plaintiff as a corporation, the defendant signed an agreement, by virtue of the terms of which, and subsequent action of the plaintiff after its incorporation, the liability of the defendant is claimed to exist.   This agreement provides, in substance, that it is proposed to publish a daily edition of the Yonkers Gazette, in connection with a weekly paper of that name; that, in furtherance of such purpose, it is proposed to organize a corporation under the title of "The Gazette Publishing Company," with a capital stock of $15,000, divided into 150 shares, of $100 each; that the plant and good will of the Yonkers Gazette should be turned over to the corporation, in return for which it should receive 70 shares of the capital stock, and the remaining 80 shares were to be offered for subscription. Then follows the agreement: "We, the undersigned, hereby subscribe for the number of shares set opposite our names."   This was signed by the defendant, and one share set opposite his name.   Steps were immediately taken to form the incorporation, all of which seem to have been in compliance with the statute.   The defendant took no part in these proceedings, and did not become one of the incorporators.   His name, together with his post-office address, and the amount of his subscription, was attached to the certificate required by the business corporation law.   When the certificate came to be filed, it was found that there existed another domestic corporation of the same name, and for this reason the secretary of state refused to receive and file the certificate; holding that it violated section 6 of the general corporation law, which prohibits the use of the same name already applied to another domestic corporation, or one so nearly resembling it as to be calculated to deceive.   For this reason the name was changed, and the incorporation was had under its

present name.   In all other respects it remained the same.   The change in name in no wise affected the business to be carried on, or the purpose of the incorporation.   After being incorporated, a certificate of one share of stock was duly issued by the officers of the corporation, and delivered to the defendant, with a demand for the payment of the sum due under his subscription by virtue of the calls which had been then made by the corporation.   The defendant returned the certificate of stock, disclaimed all liability by virtue of his subscription, and denied that he sustained the relation of stockholder to the corporation.   Thereupon this action was brought.   The court below held that the agreement was valid as a subscription to the capital stock of the corporation, and having been accepted and acted upon by the company, and liability incurred upon the strength of it, the defendant was liable thereunder.   The defendant assails this conclusion as unsound in law, and he urges that the change in name is fatal, as he never subscribed to the stock of such a corporation; that the subscription was invalid, as 10 per cent. was not paid in when it was made; and that the agreement itself is invalid, and does not constitute a binding subscription.   We shall examine these questions in the inverse order of their statement.

The law is fairly well settled that where parties propose to form a corporation, and become shareholders therein, and such parties intend to become such shareholders, without further act upon their part, upon the incorporation of the company, and the agreement remains open and is unrevoked, and the corporation is formed in pursuance of it, and thereafter acts upon it by accepting the same, such agreement is valid and binding as a subscription to the capital stock of such corporation.   Railroad Co. v. Clark, 22 Hun, 359; Same v. Gifford, 87 N. Y. 294.   These decisions recognize that such an agreement is not valid and binding when made, as there is then in existence no party, representing the company, who is capable of contracting.   But when the company is organized, and acts upon the contract by an acceptance of what is regarded as an open, continuing proposal, it becomes a valid, binding agreement, to be enforced according to its terms.   In the Clark and Gifford Cases the element of ratification by the subscribers consisted of payments of calls upon the stock after the corporation was organized.   We do not understand, however, that the doctrine of these cases makes recognition by the subscriber an essential prerequisite.   The contract becomes of force when the proposal remains open, and the corporation accepts the same.   Music-Hall Co. v. Carey, 116 Mass. 473; Railroad Co. v. Hatch, 20 N. Y. 161; Manufacturing Co. v. Peabody, 21 App. Div. 247, 47 N. Y. Supp. 677; Mor. Priv. Corp. § 47.   There are agreements of a somewhat similar character which do not admit of enforcement, and are not binding as a common-law agreement.   It is quite easy to confuse the two classes, although there is a clear distinction between them.   In the first class it is to be noticed that the agreement is to form a corporation, and subscribe to its stock.   The latter class are mutual agreements to subscribe for stock in a corporation thereafter to be formed.   In the first the agreement is unconditional and absolute,—to form the corporation and take the stock,—

and, when acted upon by the corporation, is binding, as that is all that is needful to make the contract of force. Such contracts contemplate no further act upon the part of the person making such agreement. In the second class the agreement is to subscribe for shares when the company shall be organized. This clearly contemplates something more to be done; i. e. the actual subscription. There exists no agreement in such case to become stockholders. When the corporation is formed, such agreement is to take shares, which involves a subsequent act,—that of formally subscribing for the stock. Illustrations of such contracts are found in Railroad Co. v. Curtiss, 80 N. Y. 219; 1 Mor. Priv. Corp. § 49. There is no essential difference between this case and the contract which was upheld in the Clark and Gifford Cases, supra, and we see no reason why a different rule should obtain. In the present case the plan was expressed to form a corporation for a particular purpose. After such recital, the language used is, "We * * * hereby subscribe." This is absolute and unconditional. It does not contemplate further action upon the part of those signing, and must be regarded as final, when, being unrevoked, it is acted upon by the corporation then in contemplation of formation. There is nothing in the statute which required that the defendant should sign the certificate of incorporation. This was only necessary to be done by the incorporators. The certificate requires the names and post-office addresses of the subscribers to the stock, but it does not require that this shall be signed by the individual subscriber. All that is needed is the fact, which may be stated by any person possessing the required knowledge. Business Corporation Law, § 2, subd. 9.

The payment of 10 per cent. when the agreement was made was not essential to its validity. It is clear from the statute that such payment is only required of those who subscribe after the organization of the corporation. As to the others, a different rule obtains. Stock Corporation Law, §§ 41–43; Gas Co. v. Bain, 9 Misc. Rep. 425, 30 N. Y. Supp. 264.

Nor do we think that the change in the name affects the defendant's liability. The purpose of the incorporation seems to have been carried out as contemplated. There was no change in object or in substance. Contracts for the creation of corporations are to be regarded as having been made in contemplation of the authority existing in the state, and vested in state officers by the legislature, as well as the general powers of control possessed by the legislature over them. When the business is not changed, or the party is not shown to be prejudiced, and no fraud intervenes, there exists no sound basis for being relieved from a contract whose substance is fully performed. Plank-Road Co. v. Thatcher, 11 N. Y. 102; Railroad Co. v. Dudley, 14 N. Y. 336; Hotel Co. v. Hersee, 79 N. Y. 454. There is nothing further in the case which requires discussion.

The judgment should be affirmed. All concur.

Judgment affirmed, with costs.