WOODS MOTOR VEHICLE COMPANY OF BUFFALO, Respondent, *v.* JAMES B. BRADY, Appellant.

1. APPEAL — UNANIMOUS AFFIRMANCE. A judgment founded wholly upon immaterial evidence, every part of which was duly objected to and the objection fortified by an exception, is not protected by a unanimous affirmance, so as to preclude the Court of Appeals from considering the questions raised by the exceptions.

2. CORPORATIONS — ACTION TO ENFORCE SUBSCRIPTIONS TO STOCK OF CORPORATION TO BE ORGANIZED — CHANGE OF PURPOSE OF INCORPORATION. A subscription to the stock of a corporation "to be organized * * * for the purpose of dealing in automobiles and motor vehicles," specifying the number of shares subscribed for, but stating neither the

10

amount of the subscription nor the par value of the stock, is not enforceable in an action against the subscriber by a corporation subsequently organized for the purpose of "*manufacturing*, leasing, purchasing and selling of all kinds of automobiles, motor vehicles and other vehicles," where it appears that the defendant was not one of the incorporators, that after the organization of the corporation, although payment of his subscription was demanded he refused to pay it and did not subscribe for its stock, and did not in any way ratify the subscription agreement; since the element of manufacturing being new, and materially changing the character and enlarging the risks of the business, discharged such of the subscribers as did not assent to it; the agreement and plaintiff's certificate of incorporation, therefore, are immaterial and incompetent evidence of defendant's liability, and, in the absence of other evidence making them material, are insufficient upon which to base a recovery.

*Woods Motor Vehicle Co.* v. *Brady*, 90 App. Div. 610, reversed.

(Argued February 23, 1905; decided March 14, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 16, 1904, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles J. Hardy* for appellant. There is a fatal variance between plaintiff's allegations and its proofs. (*Hawley* v. *Upton*, 102 U. S. 314.) Plaintiff failed in proof essential to make out a cause of action. (*Hawley* v. *Upton*, 102 U. S. 314.) The subscription agreement is without consideration in its support so far as this defendant is concerned. It lacks the essential element of mutuality. It is worthless, ineffective, of no legal effect, and insufficient in law to create any obligation from defendant to plaintiff. (*E., etc., Co.* v. *Owen*, 32 Barb. 625; *S. B. G. Co.* v. *Bain*, 9 Misc. Rep. 425; Clark on Corp. 267; *Hamilton College* v. *Stewart*, 1 N. Y. 581; *T., etc., Co.* v. *Tibbetts*, 18 Barb. 297; *Dorris* v. *Sweeney*, 64 Barb. 636; *E. P. R. Co.* v. *Vaughan*, 14 N. Y. 546; *L. O., etc., R. R. Co.* v. *Curtiss*, 80 N. Y. 220; *B., etc., Co.* v. *Clark*, 22 Hun, 359; 87 N. Y. 295; *Yonkers Co.* v. *Taylor*, 30 App. Div. 334.) Subscription agreements, like the one

in suit, are not recognized by our statutes, are void as contrary to public policy, and have been condemned by our courts. (*Matter of Rochester R. R. Co.*, 50 Hun, 29; *G. E. Co.* v. *Wightmore*, 3 App. Div. 118.)

*James McCormick Mitchell* for respondent. The unanimous decision of the Appellate Division that there is evidence supporting or tending to sustain the findings of fact made by the trial court cannot be reviewed in this court. (Const. N. Y. art. 6, § 9; Code Civ. Pro. § 191, subd. 4.) The alleged variance between the plaintiff's allegations and its proofs is utterly immaterial. (Cook on Corp. [5th ed.] § 75; Thompson on Corp. §§ 1175, 1178.) The plaintiff was under no obligation to tender to the defendant the stock for which he had subscribed prior to instituting this action to recover the amount of the defendant's subscription on his refusal to pay the same. (*Kohlmetz* v. *Calkins*, 16 App. Div. 518; *Beals* v. *B. C. Co.*, 49 App. Div. 589; Cook on Corp. [5th ed.] § 192; Morawetz on Priv. Corp. §§ 56, 61, 148; Thompson on Corp. § 1902.) The evidence is uncontradicted that the plaintiff corporation was organized pursuant to, in reliance on, and in accordance with, the subscription agreement which the defendant signed. (*Y. G. Co.* v. *Taylor*, 30 App. Div. 334; Thompson on Corp. §§ 1274, 1283.) The fact that the defendant did not subscribe to the plaintiff's certificate of incorporation, and the further fact that his name was not inserted in said certificate as a subscriber, while, perhaps, some evidence that the plaintiff's incorporators had not recognized his subscription, are in no manner probative of an election on the part of the corporation to accept or reject his subscription because the corporation was not in existence when the certificate was drawn. In this case the evidence is, in any event, nullified by the uncontradicted proof that, immediately after the incorporation of the plaintiff, its board of directors, on the first call for the payment of preliminary stock subscriptions, made demand upon the defendant for the payment of his said subscription. (*Y. G. Co.* v. *Taylor*, 30 App. Div. 334; Thompson on Corp.

§ 1170; Cook on Corp. [5th ed.] 216, § 72; *R. U. Seminary* v. *McDonald*, 34 N. Y. 379; *Martin* v. *R. M. Co.*, 95 App. Div. 18; *Oldham* v. *M. S., etc., Co.*, 103 Ky. 529; *S. J. M. Co.* v. *Munger*, 106 Mich. 90.) The subscription by the defendant to the plaintiff's capital stock was absolute and unconditional. It constituted a continuing offer until the plaintiff became incorporated. The plaintiff's acceptance made the offer irrevocable, and fixed the defendant's liability without proof of consideration other than the plaintiff's incorporation. (*U. G. Co.* v. *Eisner*, 22 App. Div. 1; Cook on Corp. [5th ed.], §§ 71, 75, 172, 175; Morawetz on Corp. §§ 50, 72, 133; *Y. G. Co.* v. *Taylor*, 30 App. Div. 334; 2 Clark & Marshall on Priv. Corp. §§ 437, 442; Thompson on Corp. 920, 922, 923, §§ 1165, 1170; *R. & K. F. L. Co.* v. *Roe*, 7 App. Div. 366; *Raegener* v. *Brockway*, 58 App. Div. 166; *Stoddard* v. *Lum*, 159 N. Y. 265; *B. & J. R. R. Co.* v. *Gifford*, 87 N. Y. 294; *Dayton* v. *Borst*, 31 N. Y. 435; *B. & P. R. R. Co.* v. *Hatch*, 20 N. Y. 157; *B., etc., R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Sugory* v. *Du Bois*, 3 Sandf. Ch. 466; *Spear* v. *Crawford*, 14 Wend. 20.)

VANN, J. It was alleged in the complaint "that prior to and in contemplation of" the incorporation of the plaintiff, and about the 16th of January, 1900, the defendant signed and delivered a written agreement whereby for a valuable consideration he promised to take fifty shares of the preferred capital stock of the plaintiff, and to pay therefor the sum of $5,000, or at the rate of $100 per share, whenever payment should be called for by the board of directors. The defendant, by a substantial denial of knowledge or information sufficient to form a belief, put at issue these allegations and thereby raised one of the questions of fact presented for trial.

To support its complaint the plaintiff offered in evidence a paper, dated January 16th, 1900, signed by the defendant and seven others, of which the following is a copy:

"We, the undersigned, in consideration of the mutual covenants and agreements hereinafter contained, hereby subscribe

for the number of shares set opposite our respective names, of the seven per cent preferred, non-cumulative capital stock of a corporation to be organized under the laws of the State of New York, for the purpose of dealing in automobiles and motor vehicles, which corporation is to have a capital stock of three hundred thousand dollars ($300,000), of which one hundred thousand dollars ($100,000) shall be seven per cent (7%) preferred, non-cumulative stock, and two hundred thousand dollars ($200,000) common stock, and we further agree to pay for the said stock so subscribed whenever payment of the same may be called for by the Board of Directors of said corporation."

Written opposite the signature of the defendant were the words "Fifty shares," but there was nothing in the body of the paper or in connection with the signature to show the amount of the subscription or the par value of the shares.

The defendant objected to this instrument as immaterial and incompetent, and especially because there was nothing to connect it with the plaintiff, but the objection was overruled and an exception taken. The certificate to incorporate the plaintiff was then read in evidence, subject to the objection that it was immaterial and that there was nothing to connect it with the agreement or with the defendant. While the certificate was dated January 16th, 1900, and four of the incorporators acknowledged it on that day, the last acknowledgment was not taken until May 16th, and the paper was not filed until May 29th. It fixed the par value of the stock, both common and preferred, at $100 per share, and stated that the amount of capital with which the corporation would begin business was the sum of $5,000. The name of the defendant did not appear therein, although the names of "the subscribers and * * * the number of shares of stock which each agrees to take in the corporation" were set forth. There was no reference to the subscription agreement signed by the defendant, but the president of the plaintiff was allowed to testify, subject to the objection that it was a conclusion, that the plaintiff was the company referred to in that

instrument. On the 13th of June, 1900, a call was made upon the subscribers for payment of their subscriptions for stock, of which notice was given to the defendant. Except as stated there was no evidence which in any way connected the defendant with the plaintiff. The trial court rendered judgment against the defendant for the sum of $5,000, besides interest, and the Appellate Division unanimously affirmed.

The findings follow the allegations of the complaint, which were general in form, rather than the evidence, which was specific. As the agreement was not set forth at length and even the substance thereof was not fully stated, the defects now relied on do not appear in the decision. The findings are sufficient to support the conclusions of law, so that any defect in the papers objected to was raised, if at all, by the objections made when they were offered in evidence. If those papers were so defective that they did not bind the defendant and the defect was not corrected by other evidence, they were clearly immaterial and as they were the sole foundation of the judgment rendered, their admission in evidence is reversible error.

The complaint pleads the effect of a different contract from that offered in evidence, as the one was an agreement to pay a definite sum of money while the other was not. Unless the papers objected to, which constitute the only contract claimed to have been made, were sufficient to authorize a recovery they were necessarily immaterial. A paper which makes out a part of a cause of action only is not material unless the part wanting is subsequently supplied. As only one piece of evidence can be received at a time, it is usual to admit each as offered subject to objection, but unless it is made material by the receipt of further evidence, an exception to the ruling stands in full force and effect. Such objections are not affected by unanimous affirmance, as otherwise a recovery might be had wholly on immaterial evidence, although every portion thereof was duly objected to when it was offered and due exception was taken to the ruling admitting it. There is no way to prevent such a recovery other than that adopted by the defend-

ant upon the trial of this action. The hardships of unani-
mous affirmance are many, but we have never yet extended
them so far as to protect a judgment founded wholly upon
immaterial evidence, every part of which was duly objected
to and the objection fortified by an exception. While we
must presume that there was evidence to support the findings,
we are not required to presume that immaterial evidence was
made material, or that it had no effect upon the result. I
think that the exceptions raised for our consideration the
questions about to be discussed.

The subscription paper was so indefinite that it never
became a binding obligation, even when considered in connec-
tion with the other evidence. While the number of shares
subscribed for was specified, neither the amount of the sub-
scription nor the par value of the shares was stated. There
was no agreement to form a corporation, take stock therein
and pay therefor a certain sum. There was no reference to
any other paper and no means of ascertaining the amount
that the defendant had agreed to pay. The par value of
shares is not fixed by statute, except that they must "not be
less than five nor more than one hundred dollars" each, but
by the certificate of incorporation and until that is filed the
subject is open to change at the will of the proposed incorpo-
rators. (L. 1896, ch. 460, § 2.) The statute places no other
limit upon the par value of a share, but leaves it to the dis-
cretion of those who sign the certificate of incorporation. As
the face value of the shares was not limited, except as stated,
either by statute or by the subscription agreement, when the
corporation came to be formed the amount might have been
fixed at $5 or $100 per share. Thus, even upon the assump-
tion that the company was formed pursuant to the subscrip-
tion agreement, of which there was no competent evidence,
the defendant could not be bound by the action of third per-
sons, who were not his agents and over whom he had no con-
trol. He did not promise, either expressly or by reasonable
implication, to pay for the shares at a price to be fixed by the
incorporators. They could not fasten an obligation upon him

without his consent and he never promised to pay a definite sum, or to take shares of a defined price or value. It does not appear that he was consulted as to the contents of the certificate of incorporation, or that he knew anything about it before it was filed, or at any time assented to it in any way. Doubtless there was some verbal understanding as to the amount of his subsciption when he signed the agreement, but no attempt was made to show it, probably because the rules of evidence would not permit. If the subscription paper was a continuous offer, open to acceptance by the plaintiff when organized, or by the certificate of organization itself, it was not accepted in the form it was made, as will presently appear.

The plaintiff was not a party to the subscription paper which was signed by eight persons and which, if capable of enforcement at all, could be enforced only by one of the contracting parties against another. It was so held when the following instrument was under consideration : " We the undersigned, citizens of Unionville and vicinity, pledge ourselves to subscribe for and take stock in and for the construction of the Lake Ontario Shore Railroad, to the amount set opposite our names respectively, on condition said road be located and built through or north of the village of Unionville in Parma." This was signed by the defendant among others and opposite his signature he wrote " $500." Although the name of an existing corporation was specified and the amount of the subscription was stated, it was held that the rule applicable to the case was " that when two persons for a consideration sufficient as between themselves, covenant to do some act, which if done would incidentally result in the benefit of a mere stranger, that stranger has not a right to enforce the covenant, although one of the contracting parties might enforce it as against the other." (*Lake Ontario Shore R. R. Co.* v. *Curtiss,* 80 N. Y. 219, 222.)

No sufficient connection was shown between the two papers to make them parts of one instrument. They are contemporaneous in date, but not in execution, as there was a difference of four months in that respect. The signers were not the

same, for the defendant did not sign the certificate, which was signed by two strangers to the agreement. Neither refers to the other, and the name of the plaintiff or of the proposed company is not stated in the agreement. The defendant is not included in the list of subscribers for stock set forth in the certificate, as required by the statute then in force, and four of those subscribers did not sign the agreement. (L. 1896, ch. 460, § 2, par. 9.) The object of the proposed company, as stated in the agreement, is "dealing in automobiles and motor vehicles," while that of the plaintiff, as stated in the certificate, is "the *manufacturing*, leasing, purchasing and selling of all kinds of automobiles, motor vehicles and other vehicles." The element of manufacturing is new, and by materially changing the character and enlarging the risks of the business discharged such of the subscribers as did not assent to it. (*Dorris* v. *Sweeney*, 60 N. Y. 463; *Burrows* v. *Smith*, 10 N. Y. 550; *Ashton* v. *Burbank*, 2 Dillon C. C. Rep. 435, 440; *Kenosha, etc., R. R. Co.* v. *Marsh*, 17 Wis. 13; *Snook* v. *Georgia Improvement Co.*, 83 Ga. 61; *Greenbrier Industrial Exposition* v. *Rodes*, 37 W. Va. 738; *Champion* v. *Memphis & C. R. R. Co.*, 35 Miss. 692; Cook on Corporations [4th ed.], §§ 54, 502; 1 Thompson on Corporations, § 1278.)

In *Dorris* v. *Sweeney* the subscription paper provided for "the formation of a joint stock or incorporated company for the purpose of purchasing * * * Nyce's patent for preserving fruits * * * and of erecting a building * * * and of stocking the same with fruits to be preserved." The objects of the corporation when formed, as declared in its certificate of organization, were "the *manufacture* of preserved fruits, and the canning of fruits and other products, and the preserving and keeping of fruits and other articles from decay, and the transaction of such other business as is connected with and incidental to the same." An attempt to recover the amount of defendant's subscription failed because among other reasons the business of the corporation "included branches in which he had never contracted to engage." The court declared that the change "was a very material departure

from the original contract and a variation of its terms to which he never assented, the corporation having been formed without his approbation or even his knowledge, and he never having ratified in any manner these additions to the contemplated business."

In *Ashton* v. *Burbank* a change from a life and accident insurance business by adding the business of fire, marine and inland insurance was held to be of such a radical character as to discharge previous subscribers from liability to pay future assessments on their stock.

The identity of the plaintiff and the corporation contemplated by the agreement was not shown, and the right to manufacture named in the one, but not in the other, tends to show that they were not the same. The defendant did not subscribe for stock of a corporation "to be organized" to make automobiles, but to deal in them. The plaintiff was "not the company he subscribed to." (*Norwich Lock Manufacturing Co.* v. *Hockaday*, 89 Va. 557, 563.) There was no evidence that the incorporators of the plaintiff acted upon the agreement in organizing the corporation, or that the company itself, when organized, relied upon it in any action taken, except to make a call, which, so far as appears, it had no right to make. The name of the defendant does not appear upon the stock book of the plaintiff, and no tender of stock was ever made to him. After the company was organized he did not subscribe for stock, or ratify the subscription paper, or have anything to do with the plaintiff. If that paper be regarded. as an offer, and the incorporation or call as an attempt to accept it, there was a failure to comply with the terms of the offer, which was made with reference to a "dealing," not a manufacturing corporation. An offer must be accepted as made without substantial change. It cannot be enlarged by the party accepting without the consent of the party who made it.

I think that both the subscription agreement and the certificate of incorporation were immaterial and incompetent when received, and that neither was made material or competent by other evidence. As the judgment recovered against the

defendant rests upon those instruments, it follows that there should be a reversal and a new trial, costs to abide event.

CULLEN, Ch. J., O'BRIEN and WERNER, JJ., concur; GRAY, BARTLETT and HAIGHT, JJ., dissent.

Judgment reversed, etc.