## LOWVILLE & B. R. R. CO. v. ELLIOT.

(Supreme Court, Appellate Division, Fourth Department. September 26, 1906.)

**1. CORPORATIONS—SUBSCRIPTIONS TO STOCK—LIABILITY.**

A subscriber to the stock of a railroad company to be organized is, on the subsequent organization of the company, liable to pay his subscription, since Railroad Law, Laws 1892, p. 2050, c. 565, § 2, subd. 13, treats as obligatory a stock subscription when the corporation shall in fact have been organized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 215.]

**2. EVIDENCE—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.**

The court will take judicial notice of the fact that the villages of New Bremen and Beaver Falls are between Lowville and Croghan.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 10.]

**3. CORPORATIONS—SUBSCRIPTIONS TO STOCK—LIABILITY.**

A subscriber to the stock of a railroad company to be organized to build a railroad between designated termini is liable, on the company being organized to build and maintain and operate the road, as the railroad law under which the company was organized provides for a complete scheme of organization, together with the acquisition of rights of way and buildings and maintaining and operating the road.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 215.]

Appeal from Special Term, Lewis county.

Action by the Lowville & Beaver River Railroad Company against William Elliot. From a judgment for plaintiff, defendant appeals. Affirmed.

The opinion of Justice Rogers at Special Term is as follows:

Under date of July 13, 1903, the defendant, with others, subscribed a paper of which the following is a copy:

"For the purpose of organizing a company and building a railroad connecting with the Utica & Black River Railroad at Lowville, and running east by the way of New Bremen, Beaver Falls, and Croghan, we, the undersigned, hereby subscribe for the number of shares of stock, at $100.00 each, set opposite our respective names, in said railroad company, when duly organized. The estimated cost of construction of said railroad, being ten and one-half miles of standard guage, to be operated either by steam or electricity, including one mile of siding, right of way, depots, car sheds, and equipment, not to exceed two hundred thousand dollars ($200,000.00).

| Name. | Shares. | Name. | Shares. |
|-------|---------|-------|---------|
|       |         | W. L. Elliot, | 10 |
|       |         |       |         |

"Dated July 13, 1903."

On the 15th day of August thereafter 29 persons, not, however, including the defendant, executed and acknowledged a certificate for the incorporation of a railroad company, pursuant to the provisions of the railroad law, for the purpose of building, maintaining, and operating a railroad, the name of which should be the "Lowville & Beaver River Railroad," the same to be standard guage, and operated by locomotive steam power, and maintained and operated from the village of Lowville to the village of Croghan, in the town of Croghan, in the county of Lewis, and state of

New York, having a capital stock of $50,000, divided into 1,500 shares. Said certificate was filed and recorded in the office of the Secretary of State on the 17th day of September, 1903, and in the office of the county clerk of Lewis county on the 21st day of September, 1903. Thereafter, and on the 15th day of August, 1904, the railroad commissioners of this state, upon the application of said railroad corporation, certified, in accordance with section 59 of the railroad law (Laws 1892, p. 2083, c. 39), that the conditions of said section had been complied with by the applicant company, the Lowville & Beaver River Railroad Company, and that public convenience and necessity required the construction of said applicant company's rail-road as proposed in said articles of association.

Apparently the persons named in said certificate of incorporation as the directors for the first year thereafter organized, as there appears to have been named from their number a secretary and treasurer. From time to time calls were made upon the subscribers to make payments on account of the shares of stock issued to them, respectively. December 17, 1904, the plaintiff's board of directors adopted a resolution that a certificate for 10 shares of stock be issued to the defendant, for the full sum of $1,000. The plaintiff from time to time demanded payment of the defendant of the several assessments upon his subscription for stock, which he declined to pay, and on or about the 9th day of February, 1904, a certificate representing 10 shares of stock was tendered to the defendant, and said sum of $1,000 was demanded; but he declined to receive the same, or to pay therefor, except on condition that the plaintiff accept his promissory note for that amount. This the plaintiff refused to do, and this action was brought.

The defendant contends that he is not liable, because, at the time of subscribing, the plaintiff was not in existence; that he subscribed for stock to "build a railroad, connecting with the Utica & Black River Railroad at Lowville, and running east by the way of New Bremen, Beaver Falls, and Croghan"; that the certificate of incorporation is for the purpose of "building, maintaing, and operating a railroad from the village of Lowville, in the county of Lewis, state of New York, to the village of Croghan"—the criticism being that he did not subscribe to maintain and operate a road, and that he subscribed for one to be built by the way of New Bremen and Beaver Falls, whereas these towns or villages are omitted from the certificate. Subscribing for stock is the usual proceeding anticipatory of the making and filing a certificate of incorporation. It is a preliminary step taken to organize a stock company, which, as a matter of course, is not then in being. Railroad Law, Laws 1892, p. 2052, c. 565, § 2, subd. 13, contemplates and treats as obligatory a stock subscription, when the corporation shall in fact have been organized, wherein it requires that an affidavit shall be indorsed on the certificate showing that "at least ten per cent. of the minimum amount of the capital stock, authorized by law, has been subscribed thereto." When the corporation is in fact organized, the subscriber becomes liable to pay. Buffalo & Jamestown Railroad Co. v. Gifford, 87 N. Y. 295; 7 Words & Phrases, 6730. It seems to me that the certificate is a substantial compliance with the stock subscription paper.

While it does not appear by the evidence given on the trial that New Bremen and Beaver Falls are intermediate points on the route from Lowville to Croghan, I assume that the court may take judicial notice of the fact that said villages are located between said termini. Chapman v. Wilbur, 6 Hill, 475. People v. Wood, 131 N. Y. 617, 30 N. E. 243; Bang v. McAvoy, 52 App. Div. 501, 65 N. Y. Supp. 467. There is not such a variance in the route as to justify defendant's refusal to pay.

It seems to me that the defendant could not have understood he was subscribing a certificate merely for the purpose of organizing a corporation to build a road, as in the case of a contractor, or for the purpose of sale. A railroad has no value as property, except when maintained and operated. Merely to build would be a waste of the company's property, without in any manner carrying out the object of its creation. The railroad law, under which the corporation to whose stock he was subscribing is acting, provides for a complete scheme of organization, acquiring rights of way and buildings, and maintaining and operating. This he knew at the time. He made his

engagement in the light of and subject to its provisions. He must, therefore, have inferred that the building of the road contemplated the creation of a thoroughfare for the carriage of passengers and freight, in the ordinary manner of utilizing railroads, and pursuant to the statute for the construction, maintenance, and operation of railroads.

The defendant presses upon my attention the case of Woods Motor Vehicle Company v. Brady, 181 N. Y. 145, 73 N. E. 674, where the court held a subscriber for stock in a business corporation not liable. In that càse, however, the par value of the stock per share was not stated—the subscription was merely for "fifty shares" of stock—nor the amount which he should pay. In addition to that, it was for the formation of a corporation "dealing in automobiles and motor vehicles," while the certificate of organization stated that the company was to engage "in the manufacturing, leasing, purchasing, and selling of all kinds of automobiles, motor vehicles and other vehicles." So there was included the element of manufacturing, which materially changed the character and enlarged the risks of the business contemplated by the subscription. It seems to me that the case cited is not so analogous to the one at bar as to control.

The case of Yonkers Gazette Company v. Taylor, 30 App. Div. 334, 51 N. Y. Supp. 969, is very like the case here. The promising part of the agreement is in precisely the same language. The name of the proposed corporation was the "Gazette Publishing Company," but because of the similarity in name to a corporation already existing the Secretary of State refused to file the certificate, whereupon the name was changed to "Yonkers Gazette Company"; and it was held that the change was not a material one and that the agreement was substantially complied with. The court there say: "The law is fairly well settled that where parties propose to form a corporation and become shareholders therein, and such parties intend to become such shareholders, without further act on their part, upon the incorporation of the company, and the agreement remains open and unrevoked, and the corporation is formed in pursuance of it, and thereafter acts upon it, by accepting the same, such agreement is valid and binding as a subscription to the capital stock of such corporation [citing authorities]. These decisions recognize that such an agreement is not valid and binding when made, as there is then in existence no party representing the company who is capable of contracting. But when the company is organized, and acts upon the contract by an acceptance of what is regarded as an open, continuing proposal, it becomes a valid, binding agreement, to be enforced according to its terms." 30 App. Div. 336, 51 N. Y. Supp. 971.

It will be observed that in the case under consideration the agreement was not one to subscribe later on, but was a present promise—"the undersigned hereby subscribe"—so that, in the absence of a prior recall, all that remained to fix the defendant's obligation was the acceptance by the plaintiff of his subscription to 10 shares of its stock. This, as already seen, the plaintiff did by duly organizing, issuing and tendering the stock, and demanding pay therefor.

It follows that the plaintiff is entitled to judgment for $1,000, with interest from February 9, 1905, besides costs.

Insner & Bowman, for appellant.

Hiram H. Ryal, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of Rogers, J., delivered at Special Term.