AVON SPRINGS SANITARIUM CO. v. WEED.

(Supreme Court, Appellate Division, Fourth Department.  May 1, 1907.)

1. PLEADINGS—DEMURRER—EFFECT.
   A complaint on demurrer thereto must be held to state all the facts that can be implied from the allegations by reasonable and fair intendment.

2. CORPORATIONS—CONTRACTS—SUBSCRIPTION FOR STOCK—PLEADINGS.
   A complaint in an action by a corporation alleged that it was a domestic corporation, that defendants and others in contemplation of incorporation agreed to subscribe for stock with plaintiff, but had failed to pay for the stock.  *Held*, on demurrer to the complaint, that it would be assumed that plaintiff was legally incorporated, and that the certificate contained the necessary information required by the statute.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2052–2070.]

3. SAME—SUBSCRIPTION FOR STOCK—VALIDITY.
   A subscription for stock in a corporation before it was formed may be enforced by it after coming into existence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 215.]

4. SAME—ORGANIZATION BY PARTIES TO AGREEMENT—NECESSITY.
   Where defendants subscribed for stock in a corporation to be thereafter organized, it was not essential that the corporation should be organized by the parties to the agreement or their representatives.
   McLennan, P. J., dissenting.

Appeal from Special Term.

Action by the Avon Springs Sanitarium Company against William J. Weed.  From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals.  Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William Carter and Edwin A. Nash, for appellant.
James G. Greene, for respondent.

WILLIAMS, J.  The interlocutory judgment should be affirmed, with costs, with leave to plead over upon payment of the costs of this appeal and of the demurrer.  The action was brought to recover the amount of a subscription for stock in the plaintiff corporation.  The ground of the demurrer was that the complaint did not allege facts sufficient to constitute a cause of action.  The complaint alleged: That the plaintiff was a domestic corporation, organized with a capital stock of $40,000, of which $25,000 was 7 per cent. preferred, of the par value of $50 per share.  That the defendant and certain other persons, on or about October 26, 1905, in contemplation of the incorporation of the plaintiff, made and subscribed an agreement in writing, as follows:

"I hereby subscribe for 10 shares of 7 per cent. preferred stock, at $50 per share, par value $50, in a new company to be formed for the purpose of purchasing and carrying on the Avon Springs Sanitarium, to be known as the Avon Springs Sanitarium Company, or a name to be selected.  It is understood and agreed that this stock is fully paid and nonassessable, I to receive seven per cent. dividends upon the above number of shares to be paid the 1st

day of January of each and every year commencing January 1, 1907. I agree to pay for the above number of shares of stock as soon as the company is incorporated and upon delivery of the stock to me."

That on or about December 1, 1905, the plaintiff was organized, as before-alleged, for the purpose of conducting a sanitarium and the business connected therewith. That plaintiff, after incorporation, accepted the defendant's subscription for stock, and, relying thereon, purchased the Avon Springs Sanitarium, and began to carry on the same and has continued to carry it on. That the defendant was notified that the stock subscribed for by him was ready for delivery, and delivery of the certificate for such stock was tendered to defendant before the commencement of this action on October 30, 1906. That the defendant has at all times omitted to pay for the stock, and their judgment was demanded for $500, with interest from October 30, 1906. Upon demurrer to a complaint defendant admits all the facts alleged, and such inferences as can fairly be drawn from them. The complaint must be held to state all the facts that can be implied from the allegations by reasonable and fair intendment. Sage v. Culver, 147 N. Y. 241, 245, 41 N. E. 513; Greeff v. Equitable Life Ins. Soc., 160 N. Y. 19–29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659.

When this action was commenced and the complaint was served, the certificate of incorporation had been made and filed and the plaintiff had been incorporated and was in existence. The contents of the certificate were not alleged, and it was not annexed to or made a part of the complaint. We do not know what the contents of the certificate or the details of the organization of the incorporation were. If the complaint was indefinite and uncertain for these reasons, the proper remedy was by motion to make it more definite and certain. We must assume that it was legally and properly incorporated, and that the certificate contained the necessary information required by the statute. The complaint alleges that the agreement subscribing for stock was made in contemplation of the incorporation of the plaintiff; that is, they made the agreement understanding that the corporation was to be organized just as this plaintiff had been organized and existed when the complaint was served. This allegation and these facts are admitted by the demurrer. A different condition of things may appear when a trial is had and all the facts are made to appear. Upon the facts as admitted by the demurrer, we think a good cause of action existed. The appellant claims the agreement was not binding upon the defendant, and could not be enforced under the law applicable to such agreements. Morawetz on Corporations states the law as follows:

"Sec. 47. If a number of persons mutually agree to become shareholders in a corporation to be formed by them subsequently, either under a special charter or under some general law, the agreement between the parties is originally made up of a series of ordinary common-law contracts. If the parties intend to become shareholders, without further act on their part, immediately after the incorporation of the company, their agreement may very properly be held to include a continuing offer to become shareholders as soon as the corporation shall be formed. This offer may be accepted by the corporation, through its regular agents, after organization, unless previously revoked, by such acceptance the contract of membership is consummated, and the parties become stockholders in the corporation, with all the resulting rights and liabilities."

"Sec. 49. A different case is presented where the parties mutually agree to subscribe for shares in a corporation to be formed thereafter. Here there is no unconditional agreement to become shareholders as soon as the corporation shall be formed, but it is contemplated that the parties shall themselves perform an additional act before becoming shareholders, namely, execute the statutory contract of membership by subscription upon the stockbooks. It is plain, therefore, that in this case there is no offer which the corporation can accept, and the parties do not become stockholders, and cannot be charged as such, unless they subsequently carry out their agreement by subscribing for the shares."

The Buffalo & J. R. R. Co. v. Gifford, 87 N. Y. 294, is an illustration of the rule under section 47 above, and Lake Ontario S. R. R. Co. v. Curtiss, 80 N. Y. 219, is an illustration of the rule under section 49 above. In the Curtiss Case the agreement was to subscribe for stock in the future, and in the opinion the court say:

"It is therefore not a subscription to the capital stock of the plaintiff, taking effect presently, but a promise, each subscriber with the other, to do so at some future time. * * * If any action could be maintained upon it by any person, it must be some one of the subscribers or his assignee. The legal effect of the contract is restricted to them. * * * When two persons for a consideration sufficient as between themselves covenant to do some act, which, if done, would incidentally result in the benefit of a mere stranger, that stranger has not a right to enforce the covenant, although one of the contracting parties might enforce it as against the other. As to the plaintiff, the contract is purely voluntary, and without consideration."

In the Gifford Case the agreement was a present subscription for the stock, and it was held valid and enforceable by the corporation. The court said:

"While the subscription was not valid and binding before the complete formation of the corporation, because there was no party with whom the defendant could then contract, yet after the corporation was formed it accepted the subscription and recognized the defendant as a stockholder, and he recognized himself as a stockholder and ratified and confirmed his subscription by payments thereon. He thus, within all the authorities, upon general principles, became a stockholder in the company, liable to pay the full amount of his subscription. * * * In that [The Curtiss] case, the contract sued upon was not one of subscription to plaintiff's stock. It was simply a promise that the defendants would subscribe," etc.

The principle that a subscription for stock, before the corporation is formed, may be enforced by the corporation after it comes into existence, is recognized in many cases in this state, and seems never to have been questioned. See Schenectady & S. Plank Road Co. v. Thatcher, 11 N. Y. 102; Buffalo & P. R. R. Co. v. Hatch, 20 N. Y. 161; Buffalo & N. Y. City R. Co. v. Dudley, 14 N. Y. 336; Stanton v. Wilson, 2 Hill, 153; Nonelectric Fibre Mfg. Co. v. Peabody, 21 App. Div. 247, 47 N. Y. Supp. 677; Louisville & B. R. R. Co. v. Elliott (Sup.) 101 N. Y. Supp. 328; Yonkers Gazette Co. v. Taylor, 30 App. Div. 334, 51 N. Y. Supp. 969. In the last case cited the distinction between the two classes of agreements referred to by Morawetz above is clearly pointed out, and one being a present subscription for stock was upheld. In Woods Motor Vehicle Co. v. Brady, 181 N. Y. 145, 73 N. E. 674, which seems to be mainly relied upon by the appellant, the general doctrine is not questioned, but the decision is based upon other considerations which are entirely consistent with

adherence to the principle of law referred to, established by repeated decisions prior thereto in the Supreme Court and in the Court of Appeals, and which we do not think the Court of Appeals intended to overrule. The principal consideration in the Motor Vehicle Case was that the corporation actually formed was not the one contemplated when the stock was subscribed for, but entirely different in name, and in the purpose for which it was organized and was to be carried on. Many things are said in the prevailing opinion, but this is the only consideration referred to in the headnote, and, the decision being by a bare majority, the grounds should not be extended beyond the fair intention of the court.

Assuming, then, that this agreement in question was enforceable by this corporation when it came into being, although made before the organization thereof, unless there are some special reasons why the general rule is not applicable, let us examine the claim made by the appellant here. (1) It was said there was no agreement between the parties to form a corporation. (2) The corporation was not formed by the parties or their common representative. (3) The agreement was indefinite and uncertain because it did not state whether the corporation to be formed was foreign or domestic, and did not state the amount of capital stock, nor the proportion which was common or preferred.

It must be remembered here that we are dealing with the allegations of the complaint which are admitted on demurrer to ascertain the facts. In the Motor Vehicle Company Case referred to there had been a trial and all the facts ascertained by proof given thereon. In that case it appeared beyond question that there was no agreement to form the corporation that was seeking to enforce the agreement. The papers themselves showed this, as we have already pointed out. In this case the allegation is that the parties made the agreement in contemplation of forming the very corporation in name and for the purpose that it was eventually formed. In that case there was no understanding, in or out of the agreement, as to what the defendant should pay for the stock subscribed for, or its par value. Here the agreement itself shows what the defendant was to pay, and the par value of the stock. The agreement here did not itself show whether the corporation was to be domestic or foreign, but the allegation of the complaint was in effect that the parties contemplated and understood the corporation was to be what it was organized—a domestic one. The agreement did not itself state the amount of capital stock, nor the proportion that was to be preferred and common. We must, however, assume and infer that the certificate of incorporation did state these things, and the allegation is that the corporation formed was just the one the parties had in contemplation when the subscription for stock was made. It was not essential that the corporation should be organized by the parties to this agreement or their representatives, and, even if it was, it does not appear that they were not engaged in forming the corporation and joined in making the certificate which was filed. In short, while in the Motor Vehicle Company Case the facts were all proven, here they do not appear by any evidence, but are admitted by the demurrer, and as so admitted they do not tend to invalidate the agreement. As

we have suggested, when a trial is had and the facts are proven, instead of admitted, a different condition of things may appear, and questions may then arise which are not before us now.

Our conclusion is that the judgment appealed from should be affirmed. All concur, except McLENNAN, P. J., who dissents.

McLENNAN, P. J. (dissenting). The question presented by this appeal is a simple one, and, as it seems to me, has been decided adversely to respondent by the courts of this state, and that it is only necessary to appreciate the precise facts in order to reach a conclusion in harmony with such decisions.

If a cause of action exists in plaintiff's favor against the defendant, it must result because of the alleged contract set out in full in the complaint and in the prevailing opinion, and which need not be repeated here. Its provisions, so far as material, are:

"I (the defendant) hereby subscribe for 10 shares of 7 per cent. preferred stock in a new company to be formed for the purpose. * * * I agree to pay for the above number of shares of stock as soon as the company is incorporated and upon delivery of the stock to me."

If such alleged contract does not impose an obligation upon the defendant which the plaintiff may enforce, the complaint fails to state a cause of action, and it is idle to consider what inferences might be drawn from the other allegations of such complaint, because the terms of such alleged contract are not ambiguous, and therefore may not be varied, changed, or given greater scope by parol evidence.

So far as appears, there was no person other than the defendant a party to such alleged agreement. No one is suggested who was under obligation to or could return any advantage or consideration to the defendant for the obligation which it is claimed he assumed. It is said that the plaintiff became the beneficiary of such obligation, but, if so, it would seem essential that some one should be authorized to confer such rights upon it. So far as appears, persons who were utter strangers to the defendant may have organized the corporation by the name and for the purposes contemplated by him; but we cannot imagine that such persons without the knowledge or consent of the defendant would be competent to form such corporation, and then through it to enforce defendant's alleged agreement. With whom the defendant contracted, if at all, does not appear. There is no party of the second part named in the alleged agreement; no one upon whom he could call to perform the covenants or agreements which formed the only consideration for his alleged obligation. The defendant did not agree to form the plaintiff corporation, nor did he authorize any one to form it for him or on his behalf.

It is well settled that, if two or more persons mutually agree to organize a corporation, and each subscribes for stock therein to be paid for after its incorporation, such agreement is valid, and may be enforced by any of the parties thereto or by the corporation after its formation. In such case the corporation represents and acts for the parties to the agreement, as their agent. But we think it has never been held by the courts of this state that a subscription to the stock

of a corporation could be enforced where there was no agreement to incorporate, and where there were no parties between whom mutuality of agreement existed.

In Woods Motor Vehicle Co. v. Brady, 181 N. Y. 145, 73 N. E. 674, the agreement which was sought to be enforced was as follows:

"We, the undersigned, in consideration of the mutual covenants and agreements hereinafter contained, hereby subscribe for the number of shares set opposite our respective names, of the seven per cent. preferred, noncumulative capital stock of a corporation to be organized under the laws of the state of New York, for the purpose of dealing in automobiles and motor vehicles, which corporation is to have a capital stock of three hundred thousand dollars ($300,000), of which one hundred thousand dollars ($100,000) shall be seven per cent. (7%) preferred, noncumulative stock, and two hundred thousand dollars ($200,000) common stock, and we further agree to pay for the said stock so subscribed, whenever payment of the same may be called for by the board of directors of said corporation."

Judge Vann, in delivering the opinion of the court, said (page 152 of 181 N. Y., page 675 of 73 N. E.):

"The plaintiff was not a party to the subscription paper which was signed by eight persons and which, if capable of enforcement at all, could be enforced only by one of the contracting parties against the other."

In that case it was pointed out that the paper could not be enforced at all for other reasons which it is unnecessary to consider here.

In Yonkers Gazette Co. v. Taylor, 30 App. Div. 334, 51 N. Y. Supp. 969, it is said that, in order to give validity to such subscription paper, there must be an agreement to form a corporation. Judge Hatch, in writing the opinion for the court in that case, said (page 336 of 30 App. Div., page 971 of 51 N. Y. Supp.):

"The law is fairly well settled that where parties propose to form a corporation and become shareholders therein, and such parties intend to become such shareholders without further act upon their part, upon the incorporation of the company, and the agreement remains open and is unrevoked, and the corporation is formed in pursuance of it, and thereafter acts upon it by accepting the same, such agreement is valid and binding as a subscription to the capital stock of such corporation. * * * There are agreements of a somewhat similar character which do not admit of enforcement, and are not binding as a common-law agreement. It is quite easy to confuse the two classes, although there is a clear distinction between them. In the first class it is to be noticed that the agreement is to form a corporation and subscribe to its capital stock. The latter class are mutual agreements to subscribe for stock in a corporation thereafter to be formed. In the first the agreement is unconditional and absolute to form the corporation and take the stock, as that is all that is needful to make the contract of force."

The same rule is stated in Morawetz on Corporations, § 47, where it is said:

"If a number of persons mutually agree to become shareholders in a corporation to be formed by them subsequently, either under a special charter or under some general law, the agreement between the parties is originally made up of a series of ordinary common law contracts."

And the author says that such agreements may be enforced by the corporation after its formation.

In Lake Ontario Shore Railroad Co. v. Curtiss, 80 N. Y. 219, the agreement which was being considered was as follows:

"We, the undersigned, citizens of Unionville and vicinity, pledge ourselves to subscribe for and take stock in and for the construction of the Lake Ontario Shore Railroad, to the amount set opposite our names respectively, on condition, said road be located and built through or north of the village of Unionville in Parma."

In an action brought to enforce such agreement, it was held that it was not a subscription to plaintiff's capital stock; that it (the plaintiff) was in no sense a party to the agreement, and could not maintain an action thereon. It was further held that when two persons for a consideration sufficient as between themselves covenant to do some act which, if done, would incidentally result in the benefit of a mere stranger, that stranger has not a right to enforce the covenant, although one of the contracting parties might enforce it as against the other.

The case of Buffalo & Jamestown R. R. Co. v. Gifford, 87 N. Y. 294, 299, is not authority for respondent's contention. In that case the defendant with other persons signed an agreement in writing by which they each agreed to take the number of shares "of the capital stock of said company set opposite our respective names, and agree to pay therefor in such time and manner as required by said company." In that case the court said:

"While the subscription was not valid and binding before the complete formation of the corporation, because there was no party with whom the defendant could then contract, yet, after the corporation was formed, it accepted the subscription and recognized the defendant as a stockholder, and he recognized himself as a stockholder and ratified and confirmed his subscription by payments thereon. He thus, within all the authorities, upon general principles, became a stockholder of the company, liable to pay the full amount of his subscription."

In the case at bar, if the defendant had ratified the acts of the parties who formed the plaintiff corporation, no one would pretend that the payment of his subscription could not be compelled by such corporation.

In Buffalo & N. Y. City R. R. Co. v. Dudley, 14 N. Y. 336, the defendant with others signed the following:

"We, the subscribers, agree to take the number of shares by us subscribed of the capital stock of the Attica and Hornellsville Railroad Company, subject to all the liabilities and penalties of the charter and by-laws of the said corporation."

The defendant at the time of signing such agreement paid 5 per cent. upon the amount of stock subscribed for by him, and took the receipt of one of the commissioners therefor. It was held that, when the defendant had thus subscribed his name and had paid his 5 per cent. and took his receipt therefor, it had the effect of making him a stockholder and the owner of the shares subscribed for by him.

In the case of Schenectady & Saratoga Plank-Road Co. v. Thatcher, 11 N. Y. 102, it appeared that the defendant and eight other persons who had subscribed for stock had been duly elected directors of the company for the first year, and that the defendant was present at such election, and acted as superintendent of the company; that he paid 5 per cent. at the time of subscribing for his stock, and later an

additional installment of 10 per cent. And it also appeared that he had transferred 50 shares of his stock to others, who had paid him for the same. It was held in that case and for all those reasons that payment for the stock subscribed for by him could be enforced by the corporation.

It is concluded that, in order to make a present subscription for stock in a corporation thereafter to be formed valid, there must be an agreement between two or more parties to form such corporation, and that only after its formation by such parties or by some one authorized to act for them in that regard can their subscriptions to its capital stock be enforced by such corporation. We think such rule is reasonable, and will prevent the anomalous situation of strangers to a subscription agreement for stock in a corporation to be formed and to the party or parties thereto organizing such corporation perchance without the knowledge or consent of such subscribers for its stock, and then by action brought in its name compel payment of their subscriptions.

The interlocutory judgment should be reversed, and the demurrer to the complaint sustained, with costs.