THE BUFFALO & JAMESTOWN RAILROAD COMPANY, Respondent, *v.* HORACE H. GIFFORD, Appellant.

Defendant, with others, subscribed an instrument written in a pocket memorandum book, which stated that "in consideration and for the purpose of becoming stockholders in" the B. & J. R. R. Co. they " do hereby subscribe and take the number of shares * * of the capital stock of said company set opposite their respective names," and they agreed to pay therefor " as required by said company." At that time the company was not organized. Subsequently, articles of association were filed, and plaintiff was organized under the General Railroad Act (Chap. 140, Laws of 1850). Defendant was not named in the articles as one of the corporators. After the organization of plaintiff, defendant's name was entered as a stockholder on its stock ledger. Calls were made of installments upon its stock, of which notice was given to defendant, and in response he paid two installments of ten per cent each. In an action to recover the

other installments called for, *held*, that there was a substantial compliance with the provision of said act (§ 4) in reference to subscriptions for stock; and that defendant was liable.

*It seems* that it was not intended by said provision to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription, good and valid at common law, is valid notwithstanding it.

In the articles of association it was stated that plaintiff's road was to be constructed, maintained and operated from the city of B. to a point on the State line between this State and Pennsylvania. The road was actually built from B. to J., about twelve miles north of the State line; the construction of the road south of J., the court found, was given up and abandoned by plaintiff. There was no proof or finding that such portion was legally or formally abandoned; the proof was simply that the construction stopped at J. *Held*, that plaintiff was not released from his subscription by the omission of plaintiff to construct its road to the State line.

After the commencement of this action, a mortgage executed by plaintiff upon its road was foreclosed, and the road and its franchises sold to purchasers who took possession. *Held*, that this was no defense to the action.

*L. O. S. R. R. Co.* v. *Curtiss* (80 N. Y. 219), distinguished.

(Argued November 21, 1881; decided January 17, 1882.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 5, 1880, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial, without a jury. (Reported below, 22 Hun, 29.)

The nature of the action and the material facts are set forth in the opinion.

*R. P. Marvin* for appellant. There was no valid subscription by defendant to plaintiff's stock. (Laws 1850, chap. 140, §§ 1, 4; *N. Y. & Erie R. R. Co.* v. *Owens,* 32 Barb. 616, 625; 16 N. Y. 451; *Troy, etc., R. R. Co.* v. *Tibbets,* 18 id. 298.) Plaintiff's failure to construct the whole of its road relieved defendant from any liability under the contract. (18 Barb. 312; 8 Mass. 268; 10 id. 384; 5 Hill, 384; *Nugent* v. *Supervisors,* 19 U. S. 248; *Troy, etc., R. R. Co.* v. *Kerr,* 17 Barb. 582.) If defendant's contract had been valid, the consideration upon which it rested has en-

tirely failed. (*L. O. S. R. R. Co.* v. *Curtis*, 80 N. Y. 219–224.) There can be no estoppel *in pais* in this case. (*Welland Canal* v. *Hathaway*, 8 Wend. 480; *Daunzell* v. *Odell*, 3 Hill, 221; *Truscott* v. *Davis*, 4 Barb. 495; *Jewett* v. *Miller*, 10 N. Y. 400; 31 Barb. 169; 9 How. 550; *N. Y. & O. R. R. Co.* v. *Van Horn*, 57 N. Y. 476; *Shapley* v. *Abbott*, 42 id. 447.)

*Grover Cleveland* for respondent. The signature of the appellant to the book containing the contracts of subscription, and the subsequent acts of the parties, constitute a valid and binding subscription to the stock of the company. (*Upton* v. *Tribilcock*, 1 Otto, 45; *Webster* v. *Upton*, id. 65; *Dutchess Co. Mfg. Co.* v. *Davis*, 14 Johns. 238; *Methodist, etc., Church* v. *Pickett*, 19 N. Y. 482; *Black River & U. R. R. Co.* v. *Clark*, 25 id. 208.) When, after the company was formed, ten per cent had been paid to the directors, this payment, together with the signing of the name, created a subscription. (*Black River & U. R. R. Co.* v. *Clark*, 25 N. Y. 208; *Beach* v. *Smith*, 30 id. 116; *B. & N. Y. C. R. R. Co.* v. *Dudley*, 14 id. 336, 353; *B. & P. R. R. Co.* v. *Hatch*, 20 id. 157; *Hamilton, etc., Plank Road Co.* v. *Rice*, 7 Barb. 157; *Syracuse, etc., R. R. Co.* v. *Gere*, 4 Hun, 392.) A single sheet of paper will do on which to receive subscriptions to stock. (*Hamilton, etc., Plank Road Co.* v. *Rice*, 7 Barb. 157.) The appellant is not released from liability by the failure of the respondent to complete its road to the State line. (*Schenectady, etc., Plank Road Co.* v. *Thatcher*, 1 Kern. 102; *Buffalo & N. Y. C. R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Troy & R. R. R. Co.* v. *Kerr*, 17 Barb. 581.)

EARL, J. This action was commenced to recover of the defendant the balance of a subscription made by him to the capital stock of the plaintiff. He was defeated at the trial term, and the judgment against him was affirmed at the General Term. The able opinions delivered in the court below are so full and satisfactory that we could rest our decision here upon them. But the very earnest argument of the learned counselor who

appeared for the appellant before us, at an age which few reach and fewer still contend in a judicial forum, has induced us to give the case more careful consideration than we would otherwise have deemed necessary.

The principal contention of the defendant is, that he never made a legal subscription to the stock of the plaintiff, and hence could not be compelled to pay any portion of the sum claimed from him. The main facts bearing upon his subscription are as follows: The plaintiff is a corporation, organized under the General Railroad Act of 1850. Its articles of association were filed March 23, 1872, and it thereby became a corporation. The defendant was not one of the corporators named in those articles. A short time before the organization of the plaintiff, he, with other persons residing at Jamestown, for the purpose of aiding and encouraging the construction of the contemplated railroad, subscribed the following instrument in a small pocket memorandum book in which it was written, to-wit: "We, the undersigned, in consideration of, and for the purpose of becoming stockholders in the Buffalo and Jamestown Railroad Company, do hereby subscribe and take the number of shares, of $100 each share, of the capital stock of said company, set opposite our respective names, and agree to pay therefor in such time and manner as required ed by said company.

|  | No. of shares. | Amount. |
|---|---|---|
| Horace H. Gifford .................. | 10 | $1,000 " |

The subscriptions were obtained by one Allen, residing at Jamestown, who afterward became a director of the company. After the organization of the company the name of the defendant was entered upon its stock ledger as a stockholder for the ten shares subscribed by him, and the company, from time to time, made calls of installments upon its stock, and prior to the time for the payment of each installment a notice was sent to the defendant and each of the other stockholders, of which the following is a blank form:

" SIR:

You are hereby notified that a call of. per cent has been made on the subscriptions to the capital stock of the Buffalo and Jamestown Railroad Company, payable on or before the day of at this office.

Respectfully yours,

PETER C. DOYLE.

*Secretary.*"

At the same time, the secretary of the company conferred upon a cashier of a bank at Jamestown authority to receive payment of the calls from the stockholders residing there, and for that purpose sent him receipts to be delivered. to those paying, of which the following is a blank form :

" BUFFALO, , 1872.

Received of

dollars, being per cent on his subscription to the capital stock of the Buffalo and Jamestown Railroad Company.

PETER C. DOYLE.

*Secretary.*

N. B.—All receipts must be returned to the treasurer before the stock can be issued."

Allen, then being a director of the plaintiff, delivered the book in which defendant had made his subscription, as above stated, to the cashier that he might receive payment of the subscriptions contained therein, and in response to the calls defendant paid, upon his subscription, ten per cent June 15, 1872, and another installment of ten per cent in December thereafter, and took from the cashier a receipt for each payment, in the form given above. After the last payment he refused to pay further installments, and this action was brought to recover the balance of such installments.

Upon these facts it is to be determined whether the defendant made a subscription to the stock of the plaintiff, which bound him. It cannot be doubted that there was enough to

make a valid contract of subscription upon common-law principles. While the subscription was not valid and binding before the complete formation of the corporation, because there was no party with whom the defendant could then contract, yet after the corporation was formed, it accepted the subscription and recognized the defendant as a stockholder, and he recognized himself as a stockholder and ratified and confirmed his subscription by payments thereon. He thus, within all the authorities, upon general principles, became a stockholder in the company, liable to pay the full amount of his subscription. (*Upton* v. *Tribilcock*, 91 U. S. 45; *Webster* v. *Upton*, id. 65; *Buffalo & N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y. 336.)

But the claim of the defendant is that the subscription, while valid, if governed by the common law alone, is invalid under the General Railroad Act, chapter 140 of the Laws of 1850. Section 1 of that act provides that the persons who subscribe the articles of association, and " all persons who shall become stockholders in such company, shall be a corporation." If there were no other provision in the act, and the persons who subscribed the articles of association did not subscribe for all the stock, the balance thereof could be taken by any persons who would make a valid common-law subscription for the same, and pay the ten per cent required in the act; and thus, when this defendant paid the first installment in June, 1872, and at that time ratified his prior subscription, it became from that time a valid subscription. The learned counsel for the appellant claims that other persons than those who signed the articles of association could become stockholders only in the mode prescribed in section 4, which provides as follows: " When such articles of association and affidavit are filed and recorded in the office of secretary of State, the directors named in such articles of association may, in case the whole of the capital stock is not before subscribed, open books of subscription to fill up the capital stock of the company in such places, and after giving such notice as they may deem expedient, and may continue to receive subscriptions until the whole capital stock is sub-

scribed. At the time of subscribing, every subscriber shall pay to the directors ten per cent of the amount subscribed by him in money ; and no subscription shall be received or taken without such payment." The precise purpose of this section is not apparent. The directors would, in the absence of such a provision, be authorized to open books of subscription for the purpose of filling up the capital stock. The section may have been drawn by the person who prepared the statute, without a definite idea of its utility or necessity. It does not prohibit or forbid any other mode of subscription, and it is not perceived that any public policy would be subserved by holding that any subscription valid at common law is invalid by this section of the statute, and we are inclined to the opinion that it was not intended by this section to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription good and valid at common law is still valid, notwithstanding this section.

But we are also of the opinion that there was a substantial compliance with the statute. The statute does not point out how, or where the books of subscription shall be opened, or what kind of books shall be used. Within the meaning of the statute, there may be one book or many, and they may be large or small. This book was opened for subscriptions before the organization of the company, and the defendant and others made their subscriptions therein. After the organization of the company, the subscriptions in that book were adopted by the company, and the persons therein named were entered as stockholders upon the stock ledger of the company. They were called upon to pay installments upon their subscriptions, and they paid the same to the agent of the plaintiff, to whom the book had been delivered by one of the officers of the company, for the purpose of receiving payments of subscriptions thereon which such officers thus recognized as valid. After such payments had been made, the book was returned to Allen, the director, who retained it until his death, and after his death, possession of it was taken by the company. Suppose all the stockholders who did not sign the articles of association had, before the articles were filed,

signed their names in this book, and after the organization of the company, the directors had taken the same and recognized the subscriptions therein as valid subscriptions, and they had been. recognized and ratified by the subscribers by payments thereon; could it be doubted that such a book would be a book of subscriptions opened by the directors, within the meaning of the statute? The statute can mean no more than that the subscriptions are to be made in a book provided by the directors for that purpose, and if they adopt one some one else has provided, every purpose of the statute is satisfied.

Very little light is thrown upon this question by the adjudications, and we will not, therefore, refer to them at large. They are sufficiently referred to and commented upon in the opinions pronounced in the court below. As will be seen by the following authorities, none of which are, however, directly in point, judicial expressions are not entirely harmonious. (*Hamilton and Deansville Plank Road Co.* v. *Rice,* 7 Barb. 157; *Troy & Boston R. R. Co.* v. *Warren,* 18 id. 310; *Erie & N. Y. City R. R. Co.* v. *Owen,* 32 id. 616.)

In the articles of association filed for the incorporation of the plaintiff, it was stated that the road was to be constructed, maintained and operated from the city of Buffalo to a point on the State line between the States of New York and Pennsylvania. The road was actually built from Buffalo to Jamestown, and the remainder of the line designated from that place to the State line, being about twelve miles, was not constructed; and it was found by the judge at the Special Term that, before the commencement of this action, "the building and construction of the part thereof lying south and beyond the village of Jamestown was, by said company, given up and abandoned." There was no proof or finding that that section of the road had been legally or formally abandoned by the company. The proof simply showed that the company stopped the construction of its road southerly at the southerly line of Jamestown, about the 1st of October, 1875. It does not appear that the company took any action that disabled it from extending its road to the State line. Under such circumstances

it cannot be claimed that the defendant was released from payment of his subscription by any omission of the company to construct its road to the State line, or by any alleged abandonment of any portion of its road.

In October, 1873, the plaintiff executed a mortgage upon its road which, in 1876 and 1877, was foreclosed, whereby the railroad and its franchises were sold to purchasers, who took possession of the road and its franchises. All of the foreclosure proceedings took place after the commencement of this action, and they do not furnish a defense thereto. The plaintiff, by these proceedings, was not deprived of its unpaid subscriptions. They continued part of its assets for the benefit of its stockholders and creditors, and no reason can be perceived for holding that the defendant should not pay the balance of his subscription.

The case of the *Lake Ontario Shore R. R. Co.* v. *Curtiss* (80 N. Y. 219) does not sustain the claim of the defendant, that the foreclosure proceedings furnish him a defense. In that case, the contract sued upon was not one of subscription to plaintiff's stock. It was simply a promise that the defendants would subscribe upon certain conditions to be performed, and those conditions were not performed by the plaintiff, and it was in no condition to perform them, and for reasons stated in the opinion, which do not apply to this case, the plaintiff was defeated.

We are, therefore, brought to the conclusion that no error was committed in the court below, and that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.