Hinman, J.
1. This is a motion on demurrer interposed by the defendant Friedman to the plaintiff’s complaint on the ground that it fails to state facts sufficient to constitute a cause of action. The action is brought by the plaintiff as trustee in bankruptcy of the Playthings Corporation to recover from the *255 defendant the sum of $4,882.50, the balance claimed to be due and unpaid upon defendant’s alleged subscription for 217 shares of the capital stock of such corporation of the par value of twenty-five dollars each.
Prior to the alleged subscription the defendant had become a stockholder and held twenty shares for which full payment had been made.
The by-laws of the corporation provide that subscriptions to its capital stock must be paid in such installments and at such times as the board of directors by resolution require. Pursuant to the by-laws the board of directors on December 27, 1917, adopted the following resolution:
“ Resolved that the unsold capital stock be offered for sale, payable, if necessary, 10% at time of subscription, remainder on or before the 1st of March, 1918.”
The complaint alleges in paragraph 14 as follows:
“ That on or about the 29th day of December, 1917, the said corporation and the above named defendant entered into an oral agreement, in and by which said agreement the said corporation agreed to sell 217 shares of its capital stock to the defendant, in addition to the stock holdings of the said defendant hereinbefore and in paragraph Tenth hereof described, for the sum of $5,425.00, and the said defendant agreed to subscribe for and purchase, and did subscribe for and purchase, said shares of stock, and did agree to pay to said corporation therefor the sum of $5,425.00.”
The complaint further alleges:
“ Fifteenth. That the said defendant on the said day agreed to pay the sum of $542.50 on account of the said subscription to and purchase of the capital stock described in paragraph fourteenth hereof, at the time of making such agreement and subscription, and to *256 pay the' balance of said sum of $5,425.00, to wit, $4,882.50, to the said corporation on March 1st, 1918. ’ ’
“ Sixteenth. That the said defendant did, pursuant to said agreement pay to the said corporation, on the 3rd day of January, 1918, the sum of $542.50.”
“ Seventeenth. That the said corporation duly performed all the terms and conditions of the said agreement on its part stipulated to be rendered and performed.”
It further appears in the complaint that no stock was issued to the defendant and that one of the resolutions of the board of directors of the corporation provided that certificates of stock should issue to such subscribers as had fully paid or should thereafter fully pay for stock.
The corporation became insolvent on March 1,1918, and on November 1, 1918, it was adjudicated a bankrupt. The plaintiff was thereafter elected its trustee in bankruptcy and upon finding the tangible assets of the corporation to be insufficient to meet the claims filed against the estate, he petitioned the United States District Court for authority to issue a call for the amount of the unpaid subscriptions to capital stock and in default of payment to commence an action to enforce payment thereof. The payment of the balance alleged to be due from the defendant has been duly demanded and refused.
The consideration of the sufficiency of this complaint has been confused by a failure to understand clearly the theory of the plaintiff’s cause of action. It will be easier to clarify the situation with reference to the main point of difference if we understand at the outset the plaintiff’s theory of his cause of action.
For example, the defendant urges that a tender of the stock to the defendant was necessary before any right of action could accrue and he cites many authori *257 ties to sustain this proposition. The fact is, however, that the cases referred to by him relate to a case of sale of shares of stock, and not to a case of ordinary subscription.
There is an important difference between the two classes of contracts. In the case of Kohlmetz v. Calkins, 16 App. Div. 518, the distinction was carefully considered. In an action brought by the receiver of a corporation to recover the amount unpaid upon a subscription to capital stock, it was held that a person who has subscribed for shares of the stock of a corporation becomes thereby a member of that corporation, taking all the rights as such by virtue of his subscription; that the delivery of the certificate for the stock is not essential to his becoming a stockholder of the corporation; that it is merely evidence of that relation ; and therefore that it was not necessary that the complaint allege a tender or delivery of the certificate of stock to the subscriber.
The court said, at page 520: “A person may become the owner of shares of stock of a corporation by subscription or by purchase. In the former case he becomes a member and takes all the rights as such by his subscription to the original stock. And no offer or delivery of a certificate is essential to his liability to pay the amount of the shares for which he has subscribed; but if his relation is that of purchaser, the delivery of the certificate and payment for the stock are in contemplation concurrent, and the offer or tender of the certificate before suit is necessary to its maintenance for the recovery of the amount of the unpaid balance for the stock. * * * A certificate, however, is not necessary to make a subscriber to the stock of a corporation a stockholder, whether he becomes such before or after its organization. It is merely evidence of that relation.”
*258 The defendant was justified in raising this question in view of the fact that the words ‘ ‘ sale ’ ’ and ‘ ‘ purchase ” are used in the complaint in connection with this transaction. The complaint also alleges, however, an agreement to subscribe for stock, and I believe a fair interpretation of the complaint is that the theory of the plaintiff is that the defendant is liable not as a purchaser but as a subscriber and it was, therefore, unnecessary to allege a tender of the stock.
I think a fair interpretation of the resolution of December 27, 1917, was that there should be either a sale or a subscription, depending upon the necessity, and that, if a subscription became necessary, ten per cent should be payable upon subscription and the balance on or before March 1, 1918. The fact is, that the latter method was adopted; the ten per cent was paid. I, therefore, reach the conclusion that the words “ sale ” and “ purchase ” as used in the complaint may be treated as surplusage, and the complaint held to set forth the cause of action upon the theory of a subscription.
The defendant urges as a further objection that the complaint is insufficient for failure to allege that the debts of a defunct corporation were contracted while the defendant was a stockholder and were payable within two years from the time they were contracted, under the requirements of sections 56 and 59 of the Stock Corporation Law. It is the further contention of the defendant that the trustee in bankruptcy cannot maintain an action to enforce the obligation of stockholders to creditors under section 56 of the Stock Corporation Law, citing Breck v. Brewster, 153 App. Div. 800. It is to be noted, however, that the court in that case conceded that the defendant was sued, not as a subscriber to recover an unpaid subscription, *259 but as a holder to enforce a statutory liability given to creditors by section 56 of the Stock Corporation Law. It seems to be well settled that such an action as the one at bar may be brought on the subscription agreements in the right of the corporation by the trustee in bankruptcy, that the stockholder is primarily liable on his contract for the full amount he agreed to pay, and that as the Bankruptcy Court has directed the trustee to issue a call or demand therefor, the propriety or validity of this order of a court of competent jurisdiction cannot be questioned collaterally. Myers v. Sturgis, 123 App. Div. 470; Jeffery v. Selwyn, 220 N. Y. 77.
The plaintiff does not purport to bring his action under section 56 of the Stock Corporation Law, which is a special statutory remedy afforded to creditors, but brings the action on the contract of subscription itself in the right of the corporation, upon the theory that subscribers to capital stock of a corporation incur a debt which may be enforced by any common law or equitable remedy, and that such an action may be brought by an assignee for the benefit of creditors or by a trustee in bankruptcy. Stoddard v. Lum, 159 N. Y. 265; Jeffery v. Selwyn, supra. It is my conclusion, therefore, that the complaint is not defective for failure to allege that the debts of the defunct corporation were contracted while defendant was a stockholder and were payable two years from the time when they ivere contracted, as required by section 59 of the Stock Corporation Law, which relates to cases where actions are brought by creditors under section 56 of the Stock Corporation Law.
The complaint sets forth the order of the Bankruptcy Court duly made authorizing the plaintiff to issue a call for the amount of the unpaid subscription and in default of payment to commence an action to *260 enforce payment thereof. Such an action is an assessment and cannot be collaterally attacked in this action.
Finally the defendant urges that the complaint is defective in that the defendant has not been shown to be a subscriber to the capital stock of the bankrupt corporation within the requirement of section 53 of the Stock Corporation Law, which reads as follows: “ If the whole capital stock shall not have been subscribed at the time of filing the certificate ,of incorporation, the directors named in the certificate may open books of subscription to fill up the capital stock in such places and after giving such notice as they may deem expedient, and may continue to receive subscriptions until the whole capital stock is subscribed. At the time of subscribing, every subscriber, whose subscription is payable in money, shall pay to the directors ten per centum upon the amount subscribed by him in cash, and no subscription shall be received or taken without such payment.”
It is conceded that the defendant paid in cash ten per centum upon the amount subscribed by him, but it is urged by the defendant that under section 53 of the Stock Corporation Law, a subscription cannot be entered into by parol and that it appears upon. the face of the complaint that the corporation and the defendant entered into “ an oral agreement.” It is my opinion that the position is not sound. The objection of the defendant is that he is not liable inasmuch as his subscription was not made in the mode pointed out by section 53. It is to be noted, however, that it is not provided in that section that the subscription shall be void unless made in subscription books opened by the directors. The payment of ten per cent undoubtedly is a prerequisite to a valid subscription, the language of the statute being that “ no subscription shall be received or taken without such payment.” *261 If it had been provided that no subscription should be received unless made in books opened by the directors, there would have been some warrant for the defendant’s position, but that the legislature has not said. The taking of shares of the capital stock of a corporation is a matter regulated by the general law of contracts, except so far as the statute has provided otherwise expressly or by necessary implication. This is the interpretation put upon the language of this section in Buffalo & Jamestown R. R. Co. v. Clark, 22 Hun, 359. The court in that case added: “ Doubtless it would be convenient and useful to have all subscriptions entered in the book under the charge of the directors, for many purposes connected with the affairs of the corporation, such as the distribution of stock, making assessments thereon, and enforcing the individual liability of stockholders; and probably considerations of this nature led to the provisions of section 4, referred to; but as between a subscriber and the corporation, it is not essential that his subscription, otherwise valid, should be made in such book. We think it would be putting a forced and unwarranted construction upon the language of section 4, to hold in the absence of negative or restrictive words, that it was intended to confine the making of a valid subscription for stock to the mode there pointed out.”
The statute under consideration at that time was the general Railroad Act of 1850 (Laws of 1850, chap. 140), from which the present section 53 of the Stock Corporation Law was derived. The principle involved in the Clark case was passed upon in connection with the case of Buffalo & Jamestown R. R. Co. v. Gifford, 87 N. Y. 294. See 87 N. Y. 632. In the Gifford case, in interpreting that section of the Railroad Law, which is now section 53 of the Stock Corporation Law, the Court of Appeals said: “ The precise purpose of this *262 section is not apparent. The directors would, in the absence of such a provision, be authorized to open books of subscription for the purpose of filling up the capital stock. The section may have been drawn by the person who prepared the statute, without a definite idea of its utility or necessity. It does not prohibit or forbid any other mode of subscription, and it is not perceived that any public policy would be subserved by holding that any subscription valid at common law is invalid by this section of the statute, and we are inclined to the opinion that it was not intended by this section to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription good and valid at common law is still valid, notwithstanding this section.”
The Court of Appeals has recently reiterated this quotation from its opinion in the Gifford case, and in distinguishing’ between the force of that portion of section 53 which deals with the mode of subscription and the latter portion, which absolutely requires a ten per cent payment in cash, the court says: “ The statute does not prohibit or forbid any other mode of subscription.”
While this conclusion was not necessary to the decision of the court in either case, these cases seem to be the only authorities in this state which have directly interpreted that portion of section 53 of the Stock Corporation Law dealing with mode of subscription or any of the statutory provisions similar to it or from which it was derived and the opinion of the court thus expressed is therefore entitled to great-weight at least, if it be assumed that it is not binding here. It is true that in neither of these cases was the question raised with reference to an oral agreement to take stock, but the effect of the decisions is to minimize the importance as a statutory requirement, *263 in a case of this character, of the opening of books of subscription.
In other words, the Court of Appeals has said that the opening of books of subscription is permissive; that the statute does not prohibit any other mode of subscription and that any contract of subscription good and valid at common law is still valid, notwithstanding this section. This means that there is no statutory provision in this state expressly or impliedly requiring a writing, and we may thus eliminate the determination of whether a good cause of action is set forth in the complaint by reason of the absence of any allegation that the defendant signed a book of subscription of the Playthings Corporation or even that the corporation had any subscription book whatsoever. There is no provision of the statute making an absolute condition'that to constitute a subscriber the name must be entered in a subscription book of the corporation either by the subscriber or by some one in his behalf. It may be that the statute imposes a duty upon the company to keep a record of such subscriptions for the benefit of the corporation or of its stockholders or of its creditors seeking to require the payment of unpaid stock subscriptions. It may be that the section is susceptible of the interpretation that if subscriptions are taken to be paid for in the future, it is the duty of the directors to open books of subscription, the penalty for the neglect of which might be ground for forfeiture to the public of the corporate franchise; but it would be straining the language used to hold by necessary implication that the omission to have the subscribers enter their names or cause their names to be entered in such a book was intended to enable the company to exempt from liabilities imposed by the act, those who, but for such an interpretation, would be held to have made a contract of subscription good and valid at common law.
*264 The statute has not said that that was the only mode of making a valid subscription, and in the absence of negative or restrictive words such as were used in the' last part of the section with reference to the payment of ten per cent in cash, I think it would be putting a forced and unwarranted construction upon the language.
It is only by holding that books and an entry of a subscription therein are necessary, or by giving a technical construction to the word “ subscription,” that we can reach the conclusion that it was the legislative intent in this state to require a writing in order to have a valid subscription agreement. In the absence oí: any such requirement'of the statute, we are left to determine the question upon the basis of what is a subscription agreement, good and valid at common law.
If it was a matter of necessary implication that we should give the word “ subscription ” its technical and literal meaning, it would be difficult to conceive of a proper book of subscription which did not contemplate that a subscriber should sign his name in the book, indicating therein the number of shares that he agreed to take; but no such technical construction has been placed upon such a provision in this or other states in the absence of clear statutory warrant or necessary implication therefrom. Great latitude has been allowed by the courts in determining what was necessary in the way of making a subscription to capital stock.
In the case of Rutenbeck v. Hohn, 143 Iowa, 13, in which an oral subscription was upheld, the court said, at page 19: “ While the strict definition of the word ‘ subscribe ’ or ‘ subscription ’ involves the idea of a written signature, yet by common usage it is often employed to include an agreement, written or oral, *265 to give or pay some amount to a designated purpose, more usually, perhaps, to some purpose for the promotion of which numerous persons are uniting their means and their efforts.” “ Subscribe ” has been defined as equivalent to “ agree to pay.” Strong v. Eldridge, 8 Wash. 595.
In the case of Somerset National Banking Co. v. Adams, 72 S. W. Repr. (Ky. 1903) 1125, the court said: “It was not necessary that the subscription should have been made by the appellee in writing. Subscriptions for the stock of corporations are made according to the principles governing contracts generally, and we know of no principle which forbids their being made by parol.”
In the American and English Encyclopedia of Law (Ch. 23, tit. “ Stockholders,” 786) it is said: “No particular form is essential to the validity of a contract of subscription. Any form by which an intent to effect a contract of membership is manifest will suffice, and even without a formal subscription, or where it is irregular, the contract may be inferred from acquiescence and acceptance of the benefits of membership.”
In Cook on Corporations (7th ed. 1913, vol. 1, § 52) the author says: ‘ ‘ There have been various dicta to the effect that a subscription cannot be entered into by parol. ” Citing Pittsburg R. R. & S. Co. v. Gazzam, 32 Penn. St. 340; Vreelamd v. New Jersey Stove Co., 29 N. J. Eq. 188; Thames Tunnel Co. v. Sheldon, 6 B. & C. 341; Fanning v. Ins. Co., 37 Ohio St. 339. “ But the later and better opinion is that such a subscription is valid and binding.” Citing Somerset, etc., Co.’s Receiver v. Adams, 72 S. W. Rep. 1125; Liberty, etc., Bank v. Otter View, etc., Co., 96 Va. 352; Rogers v. Burr, 105 Ga. 432; Rutenbeck v. Hohn, 143 Iowa, 13; Peninsula, etc., Co. v. Cody, 161 Mich. 604; Reed v. *266 Gold, 102 Va. 37; Reid v. Detroit, etc., Co., 132 Mich. 528; Colfax Hotel Co. v. Lyon, 69 Iowa, 683; Bullock v. Falmouth, etc., Co., 85 Ky. 184; Tabler v. Anglo-American Assn., 32 S. W. Repr. 602; Shellenberger v. Patterson, 168 Penn. St. 30; York Park Bldg. Assn. v. Barnes, 39 Nebr. 834.
The cases referred to by the author as containing dicta to the effect that a subscription cannot be entered into by parol seem to refer to and rest upon the English decision in the case of Thames Tunnel Co. v. Sheldon, 6 B. & C. 341. A careful reading of that case demonstrates that this point was not decided but that the court was considering a statute and interpreted it. The section involved provided: “ That the respective persons who have subscribed, or who shall hereafter subscribe or advance any money for and towards making and maintaining the said tunnel, shall, and are hereby required to pay the sums by them respectively subscribed at such times and in such manner as shall be directed by the directors; and in case any of such subscribers shall neglect to pay the same at the time and place, and in manner so required for that purpose, the said company or their directors are hereby empowered to sue for and recover the same.”
The sole question there decided was whether the word “ subscribe ” was applicable to those who had “ advanced money ” within the meaning of the statute, and the court simply said that the fair interpretation of the act was that the word “ subscriber ” was intended to apply only to those who had stipulated that they would make payment in the future by signing the contract involved in that cáse, which happened to be in writing, and not to those who had already advanced money, but who had not signed the contract.
The language used in the opinion was intended to *267 fit the facts of that case and not to determine the principle that a subscription to stock had to be in writing irrespective of the statute involved.
In the case of Colfax Hotel Co. v. Lyon, 69 Iowa, 683, it was held that a parol agreement made with the directors of a corporation to take certain shares of the stock thereof is valid and enforcible when there is no provision in the charter of the corporation or in the laws of the state requiring such contracts to be in writing.
In that case no entry was made in the stock book or records of the company until after the defendant had notified the officers of the company that he would not take or pay for the stock, so that the agreement rested entirely in parol, and the question was whether it was valid and enforcible. Having determined that there is no stautory requirement in this state that such contracts should be in writing, the reasoning of that case is applicable here. The court said: “ There is nothing in the nature of the contract which requires it to be in writing. For the purpose of effecting the object of its organization, the powers of the corporation, unless restricted by statute, are as broad as those of a natural person. * * * when no provision or limitation on the subject is made, and the object is one concerning which they have power to contract, it follows necessarily, we think, that they may contract in either manner, (orally or in writing) as may be determined by the incorporators or directors. The ability to do this is necessarily incident to the powers with which they are vested under the Law.”
In the case of Bullock v. Falmouth & Chipman Hall R. Co., 85 Ky. 184, the court held that there being consideration for the agreement, the fact that it is verbal makes no difference; and since there was nothing in *268 the statute of frauds requiring such an agreement to be in writing, an oral agreement was as binding as if it had been in writing.
In York Park Bldg. Assn. v. Barnes, 39 Nebr. 834, 839, the court said: “It is next asserted that the petition does not allege any subscription in writing to the stock. By the more recent authorities a subscription in writing is not necessary (Cook, Stock & Stockholders, sec. 52), but if a writing were required, it would be only because of the statute of frauds and not upon any principle of the common law.”
Shares of joint stock companies are neither goods, wares nor merchandise, within the meaning of the statute of frauds. 1 Thomp. Corp. § 1068. In the same volume the same author says in section 1147: “ It is neither necessary that there should be a contract in writing to take and pay for shares, nor an actual receipt of them, or what is tantamount, a receipt of their symbol, a stock certificate, in order to constitute one a shareholder. It has accordingly been held that one may become a shareholder, without signing the stock book or any agreement to take shares, and that a parol agreement made with the directors of the corporation to take stock can be enforced, when neither the governing statute, . nor the charter, requires such contract to be in writing.”
Clark and Marshall in their work on Private Corporations (Vol. II, p. 1384), say: “ No writing at all is necessary to a valid subscription to the stock of a corporation unless it is expressly or impliedly required by the charter or general law under which the corporation is formed. In the absence of such a requirement, a valid subscription may be made either orally or in writing or partly orally and partly in writing, or it may be implied from conduct.”
Beading these authorities in the light of what was *269 said by the Court of Appeals in the Gifford case, I can only reach the conclusion that in this state, subscriptions for the stock of corporations are made according to the principles governing contracts generally, and having found no principle which forbids the making of such contracts by parol, that an oral agreement to take stock is valid and enforcible when accompanied by the payment required by the statute of ten per cent in cash.
It is also settled in this state that a subscription is not invalid because a short interval of time occurs between the time of making the actual subscription agreement and the payment of the money. Excelsior Grain Binder Co. v. Stayner, 25 Hun, 91; Buffalo & Jamestown R. R. Co. v. Clark, 22 id. 359. It is thus immaterial that the ten per cent payment in cash was made by the defendant several days after the date of the subscription agreement.
2. In the case of Mills v. McNamee, which is also before me for disposition upon a similar demurrer, the facts are distinguishable only in the following respects, namely, that the subscription agreement was in writing, but that the defendant McNamee paid less than ten per cent upon the amount subscribed by him in cash. The amount which he should have paid was $542.50, and the amount of the payment made by him was $500.
As we have seen, it is the strict requirement of the statute that “ no subscription shall be received or taken without such payment.” If the law prescribes conditions or special methods for becoming a member of a corporation, the law is imperative and the courts have held strictly to the rule of the statute, with one or two exceptions to which I will refer.
It has several times been decided that no subscription to stock made after incorporation was valid or *270 binding until at least ten per cent of the amount had been paid. Black River & U. R. R. Co. v. Clarke, 25 N. Y. 208; Beach v. Smith, 30 id. 116; Ogdensburg C. & R. Co. v. Wolley, 1 Keyes, 118; New York & O. Midland R. Co. v. Van Horn, 57 N. Y. 473; South Buffalo Natural Gas Co. v. Bain, 9 Misc. Rep. 425.
As I have already pointed out, if the defendant making the subscription makes a subsequent payment of the ten per cent, the courts have held that there has been a ratification, and a compliance with the statute by so doing. Excelsior Grain Binder Co. v. Stayner, 25 Hun, 91; Buffalo & Jamestown R. Co. v. Clark, 22 id. 359.
It has also been held, in a case where the defendant subscribed for shares and failed to make a ten per cent payment, but such defendant received the shares, acted as a director of the corporation, received dividends, and sold the stock for a substantial price, that a sound public policy and the plain rules of good faith dictated that such defendant could not avoid his liability on his subscription upon the ground that he had not paid ten per cent of the amount of his subscription. In that case the statute would become a shield of fraud and the stockholder was properly held to pay the amount due on the stock on principles somewhat in the nature of an estoppel. Jeffery v. Selwyn, 220 N. Y. 77.
I am unable to find that the complaint in the case against McNamee sets forth any facts that would justify the application of the principle involved in the case of Jeffery v. Selwyn.
A different question might arise if the failure to comply with the requirement of the statute was followed by conduct on the part of the stockholder which would make it inequitable and unjust that he be permitted to repudiate the obligation which he impliedly assumed.
*271 As far as appears from the complaint there is no claim of anything done by the defendant McNamee other than payment of the $500, which was less than ten per cent of the amount of his subscription. It is my opinion that this is not enough.
My conclusion in these two cases, therefore, is that in the case against D. Harry Friedman, the demurrer should be overruled with costs, and in the case against Frank A. McNamee, the demurrer should be sustained with costs.
Ordered accordingly. •